EASTERN DIST.
*March*, 1840.

CANAL BANK
ET AL.
*vs.*
COPELAND.

## CANAL BANK ET AL. *vs.* COPELAND.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

Under the Roman law, no resolutory condition was implied in the contract of sale. If the *pactum commissorium*, was not expressly stipulated, the vendor had no right to take back his property if the price was not paid ; with such a stipulation, if the price was not paid at the appointed time, the sale was void.

If, after the expiration of the stipulated time, the vendor sued for the price, he was considered as acknowledging the sale, and precluded from treating it as a nullity ; or recovering back his property.

Under the Louisiana law, the effect of the *resolutory clause implied* in all synallagmatic contracts, is not to render the contract void, *ipso facto*, but only *voidable*, on the demand of the party complaining. There is, therefore, no inconsistency in suing for the *rescission* of the sale, after having claimed the price without success.

So, where the vendors sued the vendee for a specific compliance with the terms of adjudication, and payment of the price, and failed to enforce payment : *Held*, that an action for a rescission of the sale afterwards, was well brought.

EASTERN DIST.
March, 1840.

CANAL BANK
ET AL.
vs.
COPELAND.

This is an action instituted by the plaintiffs as vendors of a tract of land or lot of ground, against their vendee, after having failed in several attempts to compel a compliance with the terms of adjudication and payment of the price, to rescind the sale. This case has been several times before this court. See 6 *Louisiana Reports,* 543; 8 *Idem.,* 577; 12 *Idem.,* 34.

In these several cases, all the facts material to the present case are fully stated, except that in the first one, the plaintiffs claimed a strict compliance with the terms of sale, and had judgment. In the second, they resorted to the executory process in the Parish Court, to enforce the judgment they had obtained in the District Court, and failed. The third case came up on a monition to perfect the sale of the land, or lot in question, under the first judgment and execution which issued thereon; upon which the defendant, Copeland, intervened and defeated the sale. The plaintiffs, after these repeated failures to enforce the original sale and effect pay-. ment of the price, have now sued for a rescission of the contract of sale, and a return of the property.

The defendant excepted to the right to sue for a rescission of the sale, after having attempted to enforce the contract; and also claims heavy damages, in reconvention, for the losses he has sustained in consequence of being kept out of possession, and deprived of selling the property at a great price and large profit.

There was judgment sustaining the defendant's exception to the action for a rescission, and rejecting his demand in reconvention. The plaintiffs appealed.

*Slidell,* for the plaintiffs.

*Hennen* and *Deslix,* for the defendant.

*Morphy, J.,* delivered the opinion of the court.

On the 1st of May, 1833, the plaintiffs offered for sale at auction a certain tract of land near the village of Carrollton, which was adjudicated to the defendant, the last and highest bidder, for twenty-six thousand five hundred dollars, payable

one-tenth in six months, one-tenth in twelve months, for notes satisfactorily endorsed, with mortgage; and the residue of the price in two, three and four years, for notes secured by mortgage, but without endorsers. This adjudication has been a fruitful source of litigation in our courts, and the history of all the proceedings had in relation to it may be traced in 6 *Louisiana Reports*, 543; 8 *Idem.*, 577, and 12 *Idem.*, 42. For the purpose of this opinion, it will suffice to state, that the defendant having failed to comply with the terms of this adjudication, suit was brought by plaintiffs to enforce a specific execution of it, and they obtained a judgment, decreeing the defendant to pay in cash the first instalment, which, in the meantime had matured, and to furnish his notes for the balance, in conformity with the terms of the sale. The defendant never having complied with this decree, notwithstanding various attempts made by the plaintiffs, from time to time, to enforce its execution, the present suit was brought to obtain the rescission of the adjudication itself. The defendant excepted to the plaintiffs' right to bring this action, and claimed, in reconvention, heavy damages, on the ground that they had acted illegally and oppressively towards him, in the several proceedings by which they endeavored to execute their judgment, depriving him of the possession of the property for a long time, and thereby preventing him from realizing large profits on the same, &c. The judge below sustained the defendant's exception, to the right of plaintiffs to sue, but dismissed his claim for damages in reconvention. From this judgment, the plaintiffs alone have appealed, and the defendant has not prayed for any amendment of it. The only question, then, presented by this appeal, is the correctness of the opinion of the judge below, sustaining the defendant's exception to the plaintiffs' right of action.

It is urged that, by bringing suit and obtaining judgment for the price of the land sold, the plaintiffs have debarred themselves from the right of demanding, as they now do, a rescission of the sale. The maxim *electâ unâ viâ non datur recursus ad alteram*, has been relied on as decisive; and a

EASTERN DIST.
March, 1840.

CANAL BANK
ET AL.
vs.
COPELAND.

Under the Roman law, no resolutory condition was implied in the contract of sale. If the *pactum commissorium*, was not expressly disputed, the vendor had no right to take back his property, if the price was not paid; with such a stipulation, if the price was not paid at the appointed time, the sale was void.

If, after the expiration of the stipulated time the vendor sued for the price, he was considered as acknowledging the sale, and precluded from treating it as a nullity, or recovering back his property.

Under the Louisiana laws, the effect of the *resolutory clause implied* in all synallagmatic contract void, *ipso facto*, but only *voidable*, on the demand of the party complaining. There is, therefore, no inconsistency in suing for the *rescission* of the sale, after having claimed the price without success.

number of respectable authorities quoted to show its various applications in different contracts and especially that of sale. The law 7, *D., de Lege Commissoria*, on which these writers have commented, and in relation to which they cite the above maxim, reads thus : " *Post diem, legi commissoriæ præstitutum, si venditor pretium petat, legi commissoriæ renuntiatum videtur, nec variare et ad hanc redire potest.*" The authorities cited at bar would no doubt be entitled to much respect, if the contract of sale was not governed in this country by rules materially different from those of the Roman jurisprudence on the same subject. It is well known that in the Roman law no resolutory clause was implied in the contract of sale. If the *pactum commissorium* was not expressly stipulated, the vendor had no right to take back his property when the price was not paid ; but when such a stipulation was made in the sale, if at the appointed time, the price was not paid, the sale was completely void. From that moment, the property was considered as *inempta*, and the vendor could take it back as his own by a simple action of revendication ; but if after this expiration of the stipulated time, the vendor once sued for the price, he thereby acknowledged the existence of the sale and precluded himself from the right he had under the *pactum commissorium* of treating it as a nullity and claiming back his property. See 1 *Troplong, verbo mortgage*, *No. 224 ; 2 Idem., on Sale, No.* 655 and 656. *Merlin's Questions de Droit, verbo Option.* Thus it is seen, that the *pactum commissorium* of the Romans, produced effects quite different from those of the resolutory clause, which our law implies in all synallagmatic contracts. The effect of the latter is not to make the contract void *ipso facto*, but only voidable on the demand of the party complaining of a breach of it. *Louisiana Code, article* 2041. Until avoided, the sale has always been and remains in full force. There is, then, under our law, no inconsistency in suing for the rescission of a sale, after having claimed the price without success. One of the most enlightened jurists of France, in commenting on the provisions of the Napoleon Code, which are very similar to those of the Louisiana Code on this subject, says : " *Il est*

EASTERN. DIST.

*March,* 1840.

CANAL BANK
ET AL.
*vs.*
COPELAND.

*certain que, dans les cas où la clause résolutoire n'est que sous entendue l'action en résolution de la vente peut encore être exercée après que le vendeur a vainement tenté, par l'action en payement du prix, de forcer l'acheteur à remplir ses engagemens.*" Merlin's Questions de *Droit,* verbo *Option.* 17 *Sirey,* part 2, page 1. The maxim then *unâ viâ electâ, non datur recursus ad alteram,* cannot apply to the rights of a vendor under our law. It is not, moreover, to be found within any text, as a general rule; and its application must be restricted to the particular cases mentioned in the Roman law, in which we find the contrary proposition laid down as the general rule, "*nunquam actiones, de eâdem rê concurrentes, alia aliam consumit. Law* 130 *d., l.* 50, *tit.* 37, *de R. J.*

Let us now examine the provisions of our own law in relation to the rescission of contracts by reason of their inexecution by one of the parties.

The Louisiana Code, article 1906, declares that the putting in default is a pre-requisite to the recovery of the damages, or to the rescission of a contract.

Article 1905, points out the various modes in which a debtor may be put in default; one of them is " by the act of the party, when at or after the time stipulated for the performance, he demands that it shall be carried into effect, which demand may be made, either by the commencement of a suit, by a demand in writing," &c.

From the above articles, it should seem that a previous suit for the specific performance of a contract, far from being a bar to a subsequent action for its rescission, is by our law considered as one of the preliminary steps to be resorted to. How then, under any maxim of law, can it be said to imply necessarily a renunciation of the right to sue for a rescission.

Our attention has been drawn to article 149, of the Code of Practice, as having a direct bearing on this question. This article contains one of those rules of practice which would be enforced by courts of justice, even were they not written in the law, because they are founded in common sense, and result from the very nature of things. Had this article been entirely omitted in the Code, would our courts suffer suitors

EASTERN DIST.
March, 1840.

CANAL BANK
ET AL.
vs.
COPELAND.

to ask of them, at the same time, two things contrary to and exclusive of each other? would they not necessarily compel them to make an election from the very impossibility of granting two inconsistent demands; but, because two remedies, which are exclusive of each other, such as the performance of a contract and its rescission, cannot be asked for simultaneously, it by no means follows that after the one has been tried and found unavailing, the other cannot be resorted to, or that a recourse to one remedy implies a renunciation of the other. It must not be forgotten, also, in considering the bearing of article 149, of the Code of Practice, on this case, that the suit brought and the judgment obtained by the plaintiffs, is not for the price of the property sold, but for the specific performance of the adjudication. It is true that it draws the payment in cash of the first installment, because it would have been idle to order the defendant to make his note payable at a time already gone by; but this circumstance does not change the nature of the judgment under which no execution could issue for the price. It might be said that article 636, of the Code of Practice, points out the manner of enforcing judgments of this kind. It provides, it is true, that an order to the sheriff may be obtained to distrain all the property moveable and immoveable, of the party who is in default, until he shall have complied with the judgment. This remedy may be a very effective one against the contumacious wealthy, and large property holders, but in most cases must be found altogether inadequate. It could not in any way have assisted the plaintiffs, for we find in the record *a fieri facias* as that issued against the defendant for the first installment, returned "no property found." Upon the whole we are of opinion that the judgment obtained by the plaintiff is no bar to the present action, and only had the effect of putting the defendant more completely *in mora*, than the mere commencement of a suit having neglected and refused for years to carry this adjudication into effect, although solemnly decreed to do so, the defendant cannot, with good grace, complain of being now relieved from the obligation of executing it.

The judgment rescinding the adjudication to the defen-
dant, will, of necessity, supersede and render inoperative the
claim ordering a specific performance of the adjudication.

It is, therefore, ordered and decreed, that the judgment of
the District Court be annulled and reversed ; and this court
proceeding to give such judgment as in its opinion should
have been rendered below, it is ordered and decreed, that
the sale and adjudication made to the defendant on the first
of May, 1833, of the property described in the plaintiff's
petition, be rescinded and annulled ; and that the defendant
pay the costs of both courts.

EASTERN DIST.
*March*, 1840.

STATE
OF LOUISIANA
*vs*
JUDGE OF THE
PARISH COURT.
So, where the
vendors sued the
vendee for a spe-
cific compliance
with the terms
of adjudication,
and payment of
the price, and
failed to enforce
payment : *Held,*
that an action for
a rescission of
the sale after-
wards was well
brought.