## No. 753.

### GEORGE J. JONES vs. SUCCESSION OF NATHAN HOSS ET AL.

When an administrator is ordered by the court to lease succession property at public auction to the highest bidder who shall furnish approved security, he may at once, without additional advertisement, re-auction the lease, if the highest bidder at the first auction fails to furnish the prescribed security.

A liability for damages on account of any malicious wrong is strictly personal.

A judgment in favor of a party who has subrogated another to his claim is illegal.

APPEAL from the Tenth Judicial District Court, parish of Caddo. Looney, J.

Nutt & Leonard and Hicks & Hicks, for plaintiff and appellee.

W. H. Wise, for defendant.

The opinion of the court was delivered by

MARR, J.   Nathan Hoss, in his capacity as administrator of the succession of E. C. Hart, by order of the parish court of Caddo, offered at public auction, on the twenty-fourth of December, 1872, the lease for the year 1873, of the Island Plantation, belonging to the succession.

The advertisement, published in the newspaper, announced that "the lessee will be required to give a note, with approved personal security, payable January 1, 1874, in favor of Nathan Hoss, administrator;" and this was publicly announced by the auctioneer.

At the public offering George J. Jones was the highest and last bidder. He named the security, which Hoss would not accept.   He said he could give other security, and he was told this must be done or the lease would be re-offered during the legal hours, which closed at four o'clock.   Failing to furnish the security, the lease was again offered, and it was adjudicated to White, who immediately complied with the terms and gave the requisite security.

Jones was in possession under a lease for the year 1872, and Hoss was

compelled to have him dispossessed by the sheriff, by order of the parish court, on the seventh of January, 1873.

Nearly a year after this, on the nineteenth of December, 1873, after the death of Hoss and of Lewis, the auctioneer, who adjudicated the lease, Jones brought this suit against the executors and heirs and tutrix of the minors and the widow of Hoss, to recover three thousand dollars damages for loss of the profits which he would have made on the leased property, and twenty-five hundred dollars additional damages for the malicious outrage and indignity and injury to his credit caused by the conduct of Hoss.

The judgment of the court below was in favor of George J. Jones against the succession of Hoss, represented by the executors and the heirs named in the petition, for $1892; and the defendants appealed.

It was the perfect right of Nathan Hoss, it was his duty, as the representative of the succession of Hart, to require immediate and strict compliance with the terms of the letting, which was by order and authority of the parish court. All those who attended the auction knew that approved personal security would be required; and it was the business of those who intended to compete for the lease to be prepared to furnish undoubted security, for the administrator would have been derelict in duty if he had accepted doubtful security.

The names offered by Jones were not satisfactory, not such as the administrator would approve; and the lease was properly re-offered after a delay of not less than two to two and a half hours. The administrator was not obliged to resort to the "*folle enchère.*" He might have done so and held Jones responsible for any difference between his bid and that obtained at a subsequent offering; but he was not compelled to do this. The adjudication was not complete, because it was conditioned upon the giving of approved personal security; and the failure of Jones to comply with the terms authorized the treating of his bid as a nullity and the re-offering of the lease.

There were circumstances in the case which required the administrator to be extremely cautious in his dealings with Jones. Jones had leased the plantation for the year 1870, and the administrators were compelled to sue him and to resort to provisional seizure to secure the rent. He leased it again for 1871, and again the administrators sued and seized provisionally. He leased it again for 1872, and again suit was brought and provisional seizure and attachment for the rent. These three cases were then pending, and the rent for three years was unpaid. The suits were consolidated and finally disposed of by decree of this court at the July term, 1874, in favor of the administrators. 26 An. 659.

It was proven in that litigation that Jones had given the administrators a draft on his commission merchants in New Orleans for the rent

for one of the three years, and had notified them not to accept or pay the draft; and he pleaded the giving of this draft as a novation of the debt and a discharge of the lessor's privilege. The defenses set up were held, and we think properly, to be without merit or legal foundation.

No man in his senses would have been willing to renew a lease with such a tenant if he had been dealing with his own property. Certainly the administrator would not have been justified in letting to him the property of the succession without security, good and safe beyond doubt; and it is difficult to understand how any responsible person could have consented to become security for him. Hoss might well, when he saw Jones bidding, have told the auctioneer not to accept his bid. As it was accepted, it was the business of Jones to have furnished such security promptly as the administrator could not have reasonably objected to. It was near the end of the year, the period at which those intending to cultivate leased property make their arrangements; and it might have been greatly prejudicial to the succession to have waited upon the uncertainty of compliance by Jones with the terms of the letting, to do that which he knew in advance he would be required to do, and which he should have been prepared to do at once. In the event of his failure, if the day had passed, a new order of court might have been required, certainly new advertising and additional expense would have been necessary; and Hoss did no more than his duty in disregarding Jones's bid and re-offering the lease.

That part of the demand which is based upon the alleged malicious outrage and indignity need not be seriously considered. Actions for such wrongs die with the wrong-doers; and they can not be maintained against the heirs and representatives of the deceased, even when they are well founded in fact.

We find in the record, as part of the evidence, filed in the cause on the day of its date, ninth of December, 1874, a writing by which George J. Jones, in consideration of his indebtedness to his brother, A. J. Jones, in the sum of fifty-two hundred dollars, with interest from 1870, transfers to A. J. Jones "the claim in the above-entitled suit, and I subrogate him to all my rights in the same and give him full power to control and manage the same, to be held and used by him as security for the payment of the above sum as collateral security."

Strange to say, on the fourteenth of May, 1877, about two years and a half after George J. Jones had thus divested himself of all right to and power of control and management of the suit and claim, judgment was rendered in his name and in his favor in that suit upon that claim. Of course, George J. Jones no longer had any suit to prosecute or right or claim to be enforced. The judgment is erroneous in that respect, and

could not be maintained, even if there had been any merit in the suit originally, which we do not think there was.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that the suit of plaintiff be dismissed with costs in both courts.

Mr. Justice Egan, having been of counsel, is recused.

Rehearing refused.