## No. 184.

### WILLIAM ENDERS vs. GINGRAS, MULHAUPT & Co.

| 38 | 773 |
|----|-----|
| 50 | 572 |
| 38 | 773 |
| 115 | 836 |
| 38 | 773 |
| 118 | 451 |

A party who contracts with a factory for the manufacture of certain goods, and receives a partial delivery of such without objections or complaint cannot, subsequently complain as an alleged violation of the manufacturer's obligation under the contract that the goods had not been manufactured in conformity thereto.

After the debtor has been put *in mora*, his offer to execute the contract under his engagement comes too late.

APPEAL from the First District Court, Parish of Caddo. *Taylor, J.*

*Land & Land,* for Plaintiff and Appellant :

1. In order to put the debtor in default, the demand that the contract shall be carried into effect must be made either by suit, in writing, by a notarial protest, or in presence of two competent witnesses   C. C. art. 1911 ; 30 Ann. 264 ; 37 Ann. 659.

2. The husband, who was agent of his wife, is not a competent witness for her or her co-defendants, all being members of the same firm and having a common interest.   C. C. 2281 ; 1 Greenleaf, sec. 334, 335, 342 ; 1 Phil. Ev., sec. 83 ; 38 Ann. 106.

3. Though there have been repeated violations of a contract by both parties, yet if neither elects to consider it broken, and they proceed under it, neither can be considered in default.   3 Ann. 285.

4. In commutative contracts, the party desiring to put the other *in mora* must perform or offer to perform his part of the contract.   C. C. 1914 ; and having done so must make his demand as required by Art. 1911, C. C.

5. The facts stated in an affidavit for a writ of sequestration are taken as true, *prima facie.* 15 Ann. 574.   After pleading to the merits defendants cannot question the regularity of the writ in point of form, and on the trial of the merits the question of privilege is the only one that can be raised.   7 Ann. 337.

6. The prayer of defendants for "general relief" in reconvention would justify a decree dissolving the contract, though the plaintiff might not be entitled to such a decree.   H. D., p. 734 (4) ; No. 5, 11 Ann. 69.

*Alexander & Blanchard* and *J. H. Shepherd,* for Defendants and Appellees :

1. The stipulation in the contract as to the delivery of the bedsteads on the 1st of October

was waived by the plaintiff. He not only did not put the defendants in default, but by accepting the delivery after that time, waived this right to claim a dissolution of the contract. C. C. 1911, 1912, 1913; 8 L. 569: 18 L. 88; 1 R. 325; 4 Ann. 148, 243.

2. By the terms of the contract, plaintiff bound himself to pay for the bedsteads, at the factory, on delivery. The plaintiff having failed to do this, defendants were no longer bound to continue the delivery. 37 Ann. 835.

3. Plaintiff was regularly put in default by a formal verbal and written demand in behalf of defendants, for payment of the sum due them for furniture already delivered, accompanied by a formal tender of another lot then completed. This demand and tender was on October 13, and the plaintiff was thereby in default from that time.

Nine days after his being thus in default himself, the plaintiff attempted to put defendants in default.

"After the debtor has been put *in mora*, his offer to execute his engagement comes too late and cannot be listened to." 14 Ann. 713; 8 R. 161.

---

The opinion of the Court was delivered by

POCHÉ, J. This litigation grows out of the following contract:

" State of Louisiana, Parish of Caddo.—This contract, made and entered into this day between Wm. Enders and Gingras and Sellmeyer, witnesses that the said parties have entered into the following contract:

"Wm. Enders obligates himself to deliver to said Gingras and Sellmeyer 200,000 feet of beech, gum and pine lumber within one year following the date of this contract, said lumber to be of good merchantable quality, for the purpose of manufacturing into furniture and cut into such dimensions as the said G. and S. may require for the purpose of manufacturing; same to be delivered on the cars at Shreveport, in sufficient quantity to keep the factory at work, and of such kind and quality as the said G. and S. may call for. G. and S. are to pay for said lumber at the rate of $12.50 per 1000, and agree to pay the freight on same when delivered, and deduct the amount so paid from the invoice on settlement with Enders. The said Enders agrees on his part, to take all the bedsteads or other furniture made at the factory of said G. and S. within the said year in lots as finished at factory, and pay for same at the prices agreed upon for same cuts or photographs of the kind and prices of said furniture are annexed to this contract as part of it. The furniture to be finished in a workmanlike manner in accordance with said photograph or samples, and to be paid for on delivery at the factory, as follows : Two-thirds of total amount in cash and the balance, one-third, to be credited on the lumber account for lumber furnished by said Enders until the same is paid.

" Gingrass and Sellmeyer obligate themselves to make not less than 3000 bedsteads within the year, one thousand (1000) of which to be furnished by the 1st of October, 1885.

" This contract is renewable at the option of both parties at the end of the first year. Either party desiring to change or cancel same, is to give the other party sixty days notice thereof prior to the expiration of the year, otherwise this contract to remain in force for another year.."

Mrs. Mulhaupt subsequently became a member of the firm.

Plaintiff's demand is for a dissolution of the contract on account of the violation of the same by the defendants, for consequential damages in the sum of $1386,  *  *  and for the sum of $732, as the unpaid balance due on the lumber furnished by him under the contract, with vendor's privilege on the same. He obtained a writ of sequestration of the lumber on hand, in kind and in process of manufacture.

The defense is a general denial, an averment of a compliance with their contract by the defendants, of the violation of the same by plaintiff, and it ends with a prayer for the rejection of his demand for a balance on furniture delivered to plaintiff, and with a demand in reconvention for damages in the sum of $10,200.  *  *

Plaintiff appeals from a judgment which rejects his demand, dissolves his writ of sequestration, and condemns him to pay to defendants $219.65 as balance on account of furniture delivered to, and accepted by him.

The district judge rejected defendants' demand in reconvention for damages, reserving their right to claim damages on account of the sequestration.

The defendants have not prayed for an amendment, hence their claim for damages, growing out of the alleged violation of the contract is eliminated from discussion.

The pivotal point of the controversy hinges upon the alleged violation of the contract by the defendants, and the consequent right of plaintiff to sue for the dissolution.

The case was very hotly contested, numerous questions of law are discussed by counsel, and the voluminous evidence in the record is sadly conflicting.

From that mass of testimony we have reached the conclusion with the district judge that plaintiff has failed to make out his case.

It is true that the defendants utterly failed to furnish the 1000 bedsteads which the contract called for, by the 1st of October, but on the other hand, the record shows conclusively that plaintiff, by his acts, unequivocally waived that feature of the contract.

He received after that date, in sundry lots, more than two hundred bedsteads, on which he made part payments without complaint or objection.

And the record further shows that he himself then became deficient in the performance of his obligations under the contract, by refusing or neglecting to pay the balance due on the goods which had been delivered to and received by him. It was at this juncture that he was put in default by the defendant by a demand in writing, in which he was notified that some 350 bedsteads were in the factory subject to his order under the contract, which demand was made simultaneously with a demand for the payment of the balance due by him. Landeche vs. Sarpy, 37 Ann. 835

We note, in this connection, his contention that the furniture delivered to him had not been made in conformity to the specifications agreed upon, and that the same was not merchantable. The evidence does not bear him out. It shows some slight and almost imperceptible differences between the samples furnished and some pieces of the furniture made and delivered, but not sufficient to justify even a complaint.

And again, his own conduct in receiving the same without objection, in not contesting the correctness of the bill therefor, confirms that conclusion, and estops him from later complaints on that score.

The record there shows that some nine days after he had been formally put in default, he made the attempt to put the defendant *in mora* by serving on them a written notice to comply with their contract.

His demand for the dissolution of the contract is in the main predicated on that attempt. But it cannot avail him ; it came too late.

The fact of his having himself been previously put in default debars him of the right to call for the specific performance of the contract by the defendants. Moreau vs. Chairvin, 8 Rob. 161 ; Morrison vs. Wimberly, 14 Ann. 713.

We note the logical suggestion of plaintiff's counsel that an affirmance of the judgment rendred below will apparently continue in existence a contract with which both parties are manifestly dissatisfied, and that more litigation will follow in the wake of such a condition of things. But courts cannot be and are not concerned with such considerations. They must decide the issues which are presented by the pleadings, and cannot go beyond those limits. In this case the issue was the right of plaintiff to demand a dissolution of the contract. We find against him, and we can adjudicate nothing else.

We note the bill of exceptions taken by plaintiff to the ruling of the

district judge in admitting the testimony of Mulhaupt, the husband of one of the members of the firm, but as we have not considered his testimony at all, we have obviated the necessity of a discussion on an unimportant question, which we relegate to some case in which a solution of the same will be imperative.

Judgment affirmed.