No. 9889.

J. C. DIRMEYER VS. WM. P. O'HERN.

When the defendant in a suit for damages on account of an alleged tort, dies pending the litigation, after citation and before issue joined, the suit may be prosecuted against the heirs of the deceased who have accepted his succession. C. P. art. 25.

But, if besides lawful heirs, the deceased has left a surviving wife, the widow cannot be sued as an heir, but only as widow in community, as she thus becomes liable for one-half of the damages which may be recovered, and the heirs are then liable for the other half, each for his virile portion.

If the widow is cited as an heir she is not properly brought into court in her legal capacity, and in such an event the succession being only in part represented, no valid judgment can be rendered in the case.

A trial held under such pleadings is illegal, null and void, and the judgment rendered therein must be set aside, and the cause remanded to the lower court for further proceedings.

APPEAL from the Civil District Court, Parish of Orleans.
*Rightor*, J.

*E. W. Huntington & Fred. D. King*, for Plaintiff and Appellee.

*B. R. Forman*, for Defendant and Appellant:

The opinion of the court was delivered by

TODD, J. This is an action for damages caused by the alleged violent acts and conduct of the defendant, connected with and attending the execution of a writ of provisional seizure, which he (O'Hern) caused to issue against the plaintiff.

After the institution of the suit the defendant died, and his heirs, who had accepted his succession unconditionally, were made parties. They appeared, and pleaded the general issue.

The case was tried by a jury, who rendered a verdict in favor of the plaintiff for five hundred dollars, and from the judgment thereon the defendants have appealed.

The facts are these :

The plaintiff leased from O'Hern a dwelling-house at the rate of $12 per month. The lease commenced on the 6th February, 1886. The rent for that month, March and April, was punctually paid.   .

On the 2d of June the plaintiff called on the defendant, and informed him that he had lost his situation, and would be compelled to leave his house, as he could no longer pay the rent. He offered him $8 for the rent of the previous month, and promised to pay the balance in a few days, which offer was refused.

On the next day the plaintiff moved with his family to another residence. On the same day the defendant procured a writ of provisional seizure.

He handed the writ to a constable, who refused to execute it, because O'Hern insisted on accompanying him to the plaintiff's house, and because, as the officer stated, he knew O'Hern's mode and manner of collecting his rents, which he (the officer) characterized as " rough and bulldozing."

O'Hern procured the services of another officer, and went with him to the premises. He stalked into the house in advance of the officer without knocking, throwing open doors, and going from room to room. When remonstrated with by the occupant of the house (Dirmeyer, his tenant), he told him to go to h—ll, and raised his stick, quite a bludgeon, as if to strike him, when Mrs. Dirmeyer rushed between them, and then he addressed her in profane and obscene language  He was told to leave by the officer ; he did so, but soon returned, and entered the house in the same unceremonious manner. He procured a cart and carried the furniture away.

The jury by their verdict fixed the damages, caused by this outrageous conduct of O'Hern, at $500. It cannot well be seen how they could have found for a less sum consistently with the facts stated.

The counsel for the defendant seeks to palliate the conduct of O'Hern by suggesting that it was proper for him to have accompanied the officer, in order to show him the place. It could have been found very easily by the officer without O'Hern's assistance, as the house was numbered and on a well known street.

He also urges that O'Hern was provoked to the violence shown by him, by Dirmeyer breaking a shelf or some small article of furniture, saying as he did so, that he had made it with his own hands. This was utterly insufficient to justify his rude and unfeeling conduct.

Again the counsel urges that there was no proof offered that the defendants were the heirs of O'Hern, and that therefore the judgment was wholly unauthorized. The motion filed after O'Hern's death to make parties allege that the defendants (naming them) were the heirs of the deceased, and had been put in possession of his estate, and asked that they be cited.

They appeared and answered by a general denial, without putting at issue by an exception the capacity in which they were sued and which was necessary if they desired to contest it.

The general issue admitted their capacity, and the question could never be subsequently raised.

It is also urged that the damages given by the verdict and judgment were exemplary or punitory in their character, awarded on account of an offense or quasi offense of O'Hern, and that the defendant, or his heirs, could not be responsible for the same; that they were personal to O'Hern, and the action to recover them abated at his death.

There is no force in this contention. The damages were actual in their character, although of that kind that the estimate of them is left largely, under our law, to the discretion of a jury or the court. C. C. 1934.

We may well conceive that the injury, the suffering inflicted on Dirmeyer and his family by the brutal conduct of O'Hern, was as intense and painful, or perhaps, more so, than if physical violence had been used, and he had actually belabored the man and his wife with his bludgeon.

There has been great confusion of ideas which, even to some extent, is shown in our own reports, respecting actual and exemplary or punitory damages.

The former is often confounded with a pecuniary loss, and limited to such loss; and all beyond that, such as injuries physical or mental, are classed with the latter. This is a mistake. Indeed, were the question an open one, we would hesitate before recognizing this element of exemplary punitory or vindictive damages, as existing in the civil law. The theory of this kind of damages, is that, after a full indemnity has been found by a jury or a court for the injury suffered, a sum in addition thereto may be arbitrarily imposed to punish the wrong-doer, and by such punishment set an exammple to deter others from the

commission of a like offense. And these additional damages, thus found, are likewise called vindictive damages, which a judge or jury may inflict under a just sense of indignation for the wrong done, and are sometimes characterized by the homely phrase of "smart money."

It is a principle that has been borrowed from the common law, and though tacitly, and sometimes expressly, recognized in our decisions, it is really an exotic in our system.

However this may be, the present court, in repeated decisions, has recognized this kind of damages as actual damages, and these decisions are supported by eminent elementary writers on the subject. Byrne vs. Gardner, 34 Ann. 6; Deslondes vs. O'Hern, 37 Ann. 881.

The damages inflicted by O'Hern on the plaintiff being then actual damages, his liability for the same accrued then and there, and was transmitted to his heirs, although, both as to him and them, the measure of such damages was in *futuro* to be fixed by verdict and judgment.

There is, however, an error in the judgment as relates to John D. Crawford, the husband of one of the heirs, who was condemned therein. He came under no liability whatever on account of this relation to one of the heirs, and besides it does not appear that he was ever cited, or that he appeared at all in the proceeding, by answer or otherwise.

The judgment is erroneous, also, as to Mrs. Crawford. She was not cited conjointly with her husband, nor does it appear that she was authorized by him or the court to defend the suit. It was, therefore, nullity in this respect.

There is a further error in the judgment in condemning the defendant *in solido*.

Heirs are only bound jointly for their ancestors debts.

There are four heirs made parties as legal representatives of the original defendant. The entire judgment is $500, and each defendant is only bound for his virile share thereof, $125.

These several errors in the judgment must be corrected.

It is, therefore, ordered adjudged, and decreed, that the judgment of the lower court be amended as follows:

That the judgment as against John D. Crawford and his wife, Catherine O'Hern, be annulled, and the demand as to the former be rejected, and as to the latter it be dismissed as of non-suit. That the judgment as to the others, to-wit: Annie O'Hern, Wm. M. O'Hern, Matilda Breard, be reduced to the virile share of each of the total amount of said judgment, *i. e.*, to one hundred and twenty-five dollars, with legal interest thereon from the 23d of December, 1886, the date

of the rendition of the judgment in the lower court, and as thus amended it be affirmed, costs of appeal and of the lower court as to Mr. and Mrs. Crawford to be paid by the appellees.

## ON REHEARING.

POCHÉ, J.   The considerations which induced the court to reopen this case were the serious doubts suggested by a second examination of the record touching the correctness of the mode adopted by plaintiff to make proper parties, after the death of the defendant O'Hern, and as to the extent to which the heirs of the wrong-doer can be held legally responsible for the injuries which he may have inflicted through the acts complained of.

The pith of the charge made against the defendant was brutal and unmanly conduct, the use of abusive language and threats of personal violence towards plaintiff in the presence of his wife, at their own house, whither the defendant had gone in company with a constable who was seeking to execute a writ of provisional seizure, sued out against Dirmeyer, by the defendant O'Hern.

After the death of O'Hern, and before issue joined, plaintiff filed the following motion, and obtained the order subjoined thereto with a view to make new parties to his suit.

" On motion of E. W. Huntington and Fred. D. King, of counsel for J. C. Dirmeyer, plaintiff, and on suggesting to the court that since the service of citation and a copy of the petition on the defendant, the said William P. O'Hern has departed this life, and the heirs have been put in possession of his estate, and plaintiff is desirous of making them parties to this suit.

" It is ordered that the heirs of William P. O'Hern, to-wit: Annie O'Hern, widow of William P. O'Hern, Catherine O'Hern, wife of John D. Crawford, William M. O'Hern, and Matilda Breard, be made parties defendant to this suit, and be served with a copy of this order."

The most striking feature of the motion and order is, that while Annie O'Hern is therein alleged to be the surviving widow of the defendant, Wm. P. O'Hern, she is brought into court simply as an heir. And at the same time it is alleged that William P. O'Hern has left heirs at law, from which condition of things it follows clearly that Widow W. P. O'Hern could not be an heir of her husband's succession.

Article 924 of the Civil Code provides for the only circumstances under which the wife may, according to law, be the heir of her husband. It reads:

" If a married man has left no lawful descendants nor ascendants, nor any collateral relations, but a surviving wife not separated from

bed and board from him, the wife shall inherit from him, to the exclusion of any natural child or children, duly acknowledged."

Now, the motion does not set forth the quality of heirship which it alleges in the case of Catherine, and William M. O'Hern, and Matilda Breard—and whether either or any of them are descendants of the deceased, or whether they are all collateral relations, and in what proportion between themselves they are each to inherit the property of the deceased, nor does it state whether the widow is a partner in community or not. As Matilda Breard does not bear the name of the deceased it is certainly not a violent presumption to conclude that she is not a child of the deceased, but nothing in the record suggests any more information touching her legal liability for which she is sought to be made a party to the suit.

But under the law by virtue of which heirs can " be sued for civil reparation of the injury caused by the crimes or misdemeanors of the deceased, whose succession they have accepted," as expounded in our jurisprudence, such heirs are only liable jointly, each for his virile share in the succession, and the widow in community for one-half. Code of Practice, art. 25; Edwards vs. Peck, 30 Ann. 926.

Now, as the record contains no suggestion, either by pleadings or evidence, of the proportions of the property of the deceased accruing to each or any of the parties made defendants as heirs of O'Hern, how can the court determine the respective responsibility of the heirs under the verdict of the jury.

It is no answer to these views to argue that by filing a general denial these defendants have acknowledged their alleged capacity as heirs. That such a general rule has been sanctioned and enforced in our jurisprudence cannot be gainsaid. But that the rule does not apply to the peculiar circumstances of this case is equally true. What capacity will Mrs. Widow O'Hern be held to have admitted by her answers? None but that of the surviving wife of the deceased, who has left heirs, for the allegation of her widowhood coupled with the allegation of the existence of lawful heirs, excludes absolutely the possibility in law of her being an heir. But she is not sued otherwise than as an heir, hence it follows that she is not brought into court in her real and only capacity, as surviving wife, and that no judgment could be rendered against her at all.

As an heir, she is not liable, as surviving wife, she is not sued.

As to the other defendants, the contention that their general denial admits their capacity as heirs could be successfully opposed to them if their object was to dismiss the suit, but the argument is harmless

when levelled at their only complaint, which is that there has been no legal trial of the cause for the reason that one-half of the succession was entirely unrepresented, and also that they are erroneously condemned *in solido,* under the verdict of the jury allowing to plaintiff damages in the sum of five hundred dollars.

The legal attitude of the case is precisely where it stood previous to the unsuccessful effort of plaintiff to make new parties after the death of the original defendant.

Whatever is done in contravention of law is null and void, and such is the condition of the trial which has taken place below.

The foregoing views had not been pressed upon us at the first hearing of the cause, and hence our attention had been exclusively directed to the facts of the case, and not to the legal status of the suit under the pleadings.

As the necessary parties are not before the court in their true, legal and proper capacity, and as the conclusion is that there has been no legal trial of the case, it becomes unnecessary to pass, at this time, on other matters which are discussed by counsel in their briefs.

It is, therefore, ordered that our previous decree herein be annulled and set aside ; and it is now ordered, adjudged and decreed, that the judgment appealed from and the verdict of the jury in this case be reversed and set aside at the costs of plaintiff in this court, and in the lower court from and after service of petition and citation on the deceased, Wm. P. O'Hern ; other costs to abide the final determination of the case, and it is finally ordered that the cause be remanded to the lower court for further proceedings according to law and to the views herein expressed.

Mr. Justice Todd dissents.