No. 13,988.

ALLEN J. PERKINS vs. FRAZER & NASON.

### SYLLABUS.

1. A contractor who has unadvisedly refused to perform his contract may, while the situation of things is unchanged, retract the refusal, and go on with the contract; and is not cut off from so doing by the service upon him of a notice to the effect that the contractee will hold such refusal to be a default and will sue to dissolve the contract.

2. The facts being, as follows: that in March 1898 A and B entered into a contract by which A was to furnish irrigation water and B to make a rice crop and pay water rent; that B denied owing any water rent for 1898, claiming

that owing to the insufficiency of the water service the crop had suffered loss to an amount more than off-setting the water rent; that A did not press the payment of the rent, although B was well able to pay and could be made to pay; that in March 1899 the parties entered into another contract materially amending the contract of 1898, but making no allusion to the water rent for 1898; that thereafter A did not renew the claim for this water rent, not even when in February 1900 written demand was made for the payment of rent due, and presumably of all rent due; that the claim was renewed for the first time in defense to a suit by B to annul for non-performance of the contract in question,—held: this debt for rent of 1898 is presumed to have entered into the contract of 1899 as part of the consideration thereof, although not expressly mentioned in the instrument evidencing said contract. The modes of extinguishing obligations specified in Article 2130 of the Civil Code are not exclusive.

A PPEAL from the Fifteenth Judicial District, Parish of Calcasieu.—*Miller, J.*

*Sompayrac & Toomer,* for Plaintiff, Appellant.

*Pujo & Moss,* for Defendants, Appellees.

The opinion of the court was delivered by

PROVOSTY, J. In March, 1898, Nason, of the defendant firm, and Perkins, the plaintiff, made an agreement for the prolongation of Nason's irrigation canal easterly along the north boundary of Perkins' land. In March, 1899, the defendant firm, to which had passed all the rights and obligations of Nason under the said agreement, and the plaintiff made an agreement for the prolongation of the same canal southerly along the east boundary of the same land. The agreements contained reciprocal obligations: on the one part to construct the canal, and furnish water from year to year; on the other part to cultivate a specified number of acres in rice, and pay water rent from year to year. Plaintiff now sues to set aside these contracts on the ground of non-performance, and to recover damages; and defendant, in reconvention, claims the water rent for 1898 and 1899.

Defendants have aimed to carry out their contract, and, we think, have done so. True, they were somewhat tardy in beginning to furnish water to the crop of 1898, but this was owing to badness of weather, whereby work on the canal was impeded, and to slowness of machinery in coming to hand. From the time that water began to flow in the canal, say 25th of July, the supply was abundant. The crop had felt the need of water, but not to the extent of appreciably affecting results.

Had the plaintiff been prepared, as was his obligation under the express terms of the contract, to conduct the water and hold it in, all would have gone well. To a contractor starting a work of some magnitude a degree of indulgence is due—in our opinion defendants did not by their said tardiness exceed the measure. Indeed, in the petition, no specific complaint is made in connection with the water supply for 1898; the specifications are confined to the supply for the years of 1899 and 1900; they are, first, that in 1899 defendants failed to furnish to a certain part of the land enough water; and, second, that in 1900 defendants refused to furnish any water at all. The first specification is not borne out by the facts. Defendants were fully prepared to furnish all the water necessary for the crop of 1899, and they did so; if certain parts of the crop were cut short by drought, the cause must be sought for in the inadequacy of plaintiff's field levees, not in the inadequacy of the water supply. The refusal to furnish water for the crop of 1900 was retracted within a few days, and while the situation was still intact, and thereafter water was furnished and received as if the refusal had never taken place. The question whether defendants could thus retract their refusal is not, in our opinion, a difficult one. Plainly, so long as things are whole, a man who has rashly said he would not stand to his bargain may take back the word. Why not? No one is hurt, and the bargain is carried out. In the instant case the contractor was yet in time to perform the contract and the situation was unchanged. The demand for water, and the refusal, and the retraction of the refusal, took place early in the season when the crop could, without detriment, wait awhile for water.

On May 23rd plaintiff made the demand for water; on May 24th, next day, defendants refused—"unless you pay us the water rent due us for the crop of 1899;" on June 5th plaintiff notified defendants that he held this refusal to be a default on the contract, and that he would sue to set aside the contract; on June 9th defendants retracted the refusal. Under this state of facts the question comes up whether, by this notification of June 5th, plaintiff cut defendants off from the opportunity to retract the refusal. We think not. The contract was not put ended at an end to by the refusal, nor by the notice; it continued in full force and effect. Nothing short of a judgment, barring, of course, consent of parties, etc., could put an end to it. C. C. 2047. According to Demolombe (Traité des Contracts, T. 2, No. 517) and other commentators on the Articles of the Code Napoleon correspond-

ing with the Articles of our Code on the subject of the resolutory con-
dition, and according even to Pothier, the real parent of the Code
Napoleon, from which our Code is mainly derived, the contractor,
after judgment, but pending suspensive appeal, is yet in time to
perform his contract. Pothier, Vente p. 211, No. 476; Constitution
de Rents, No. 229. The spirit of the law is against the enforcement
of the resolutory condition, and in favor of the contract being carried
out if possible. The Roman law, of which our own law of contracts i-,
so to speak, a mere continuation, did not recognize the implied resolu-
tory condition in contracts having a name, such as a sale, partner-
ship, etc. We are mindful that expressions are to be found in some
of the decisions of this court to the effect that, after default, an offer
to execute comes too late (Pratt vs. Craft, 20 Ann. 291), but these
*dicta* are to be read in the light of the facts of the cases in deciding
which they are made. Article 2047 expressly authorizes the court to
permit the contract to be performed after default. (Turner vs. Col-
lins, 14 Martin, 605. Now, under the circumstances of this case, no
court on earth would have refused this permission to defendants, and
hence by retracting the refusal and going on with the contract they
merely anticipated what would have been the judgment of the court.
Their refusal was unadvised, for they could not go on using the right
of way and not furnish water, enjoy the benefits of the contract and
reject its obligations; but plaintiff had refused to pay the water rent
for 1899, and the refusal, therefore, though founded narrowly in law,
was, beyond question, founded broadly in human nature, and it is
certain that no court would have denied permission to take back this
harmless and not unprovoked threat and go on with the contract.

Defendants having performed their contract, the two demands of the
plaintiff must fail.

We are not to be understood as implying that by consenting to the
water service, such as it was, plaintiff did not waive the right to sue
in dissolution; nor that by the saving grace of protests plaintiff could,
at the same time, occupy the antagonistic positions of repudiating the
contract and receiving the water furnished in pursuance thereof; nor
that after defaulting in his own obligation to pay the water rent of
1899, plaintiff was in a position to enforce the resolutory condition;
nor that the failure of either party, in any one or more years, to
comply with the continuing obligation on the one part to furnish
water, and, on the other part, to make rice crops and pay water rent,
would be ground for the resolution of that part of the contract by

which the canal was established and the lands of the neighborhood were converted into rice growing lands; nor that the contract of 1899 did not evidence a sale pure and simple of the right of way; all these questions are left untouched by us.

Defendants are entitled to judgment for the rents of 1899, fixed by the evidence at three hundred and ninety-six and 70-100 dollars, but not to the rents of 1898.

When the contract of 1899 was entered into, plaintiff was denying that he owed these rents of 1898. He was claiming that the debt had been more than offset by the losses to the crop of 1898 resulting from the inadequacy of the water service. We have stated above that he had some ground for complaint and that defendants had some need of indulgence. The contract of 1899 was to a great extent a readjustment of the contractual situation of the parties. Among other important changes it converted the original three years term into perpetuity; and the original obligation to deliver the water on the land into the obligation to deliver the water on the highest point of the land. To our mind it is clear that this contract liquidated the situation between the parties and made a fresh start. Thereafter, so far as the record shows, defendants made no further mention of this claim for rent, not even in the letter of the 24th of May, where they were making demand for the rents, and presumably for all the rents due. True the claim is not mentioned in the instrument evidencing the contract, but it was a matter at issue between the parties, and it is so improbable that the parties should have left this issue unsettled, dealing as they were with virtually the same subject matter, that we must assume that they considered it as settled by the contract. The debt, as it were, entered into the contract as a part of the consideration thereof. The modes of extinguishing obligations, enumerated in Article 2130 C. C., are not exclusive. Bank vs. Cage, 40 Ann. 138. This particular obligation became extinguished in a mode peculiar to itself.

It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be affirmed in so far as it rejects the demands of plaintiff and the claim of defendant for the rents of the year 1898, and be set aside in so far as it rejects the claim of defendant for the rent of 1899; and it is further ordered, adjudged and decreed, that the plaintiff pay to the defendant the sum of three hundred and ninety-six and 70-100 dollars, with five per cent. per annum interest from judicial demand; and that plaintiff pay the costs of both courts.

Rehearing refused.