(43 South. 46.)

No. 16,235.

JOHNSON v. LEVY et al.

(Jan. 7, 1907. Rehearing Denied Feb. 18, 1907.)

1. ABATEMENT AND REVIVAL — BREACH OF MARRIAGE PROMISE—DEATH OF OBLIGOR.

The obligation to fulfill a marriage engagement is personal, and the obligation to respond in damages, in the event of its nonfulfillment, is incidental thereto, from which it follows that, if the obligor dies before fulfilling the engagement, and without being put in default, the right of action to recover damages for nonfulfillment perishes with him, and cannot be exercised against his heirs. But, where the obligor is put in default, as provided by law, his right to fulfill his engagement is thereby forfeited, and his obligation in the premises is merged in his obligation to respond in damages, which latter obligation thereby acquires an independent status, becomes heritable, and may be enforced against the heirs of the obligor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Abatement and Revival, § 252.]

2. DAMAGES—BREACH OF CONTRACT—INJURY TO FEELINGS AND REPUTATION.

Damages resulting from injury to feelings, reputation, and standing are recognized in this state as actual, or compensatory, as contradistinguished from exemplary, or vindictive, damages, and where they arise ex contractu, and the liability of the obligor is fixed (subject to the obligation of the obligee to prove his case) by his being put in default, there is no reason why they should not be recovered in the same manner, and to the same extent, as damages to person or property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages. § 100.]

(Syllabus by the Court.)

Appeal from Twentieth District Court, Parish of Terrebonne; Louis Phillippe Caillouet, Judge.

Action by Fanny B. Johnson against Maurice Levy and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Donelson Caffery & Son, J. C. Briant, and O'Niell & Alpha, for appellant. Harris Gagné, Foster, Milling, Godchaux & Sanders, and Alexis Brian, for appellees.

Statement of the Case.

MONROE, J. Plaintiff alleges that in 1901 she became engaged to be married to Lazare Levy, and, whilst so engaged, was seduced by him; that he repeatedly promised to fulfill his engagement, but failed to keep his promises, and, on June 29, 1903, was put in default by formal demand, with which he refused to comply; that, thereafter, plaintiff gave birth to a child, issue of her connection with said Levy, and, as a consequence of his refusal to marry her, is condemned to a life of social ostracism, disgrace, and poverty, and is injured and damaged in the sum of

$20,000. She alleges that said Levy died on June 29, 1903, and that the three parties made defendants herein (who reside in the parish of Terrebonne), with six others (who reside elsewhere), brothers and sisters of decedent, have accepted his succession unconditionally, and are liable to her jointly, for the damages so sustained. Wherefore she prays for judgment against said defendants, each, for his virile share of the amount stated. Defendants filed an exception of no cause of action, which was overruled. They then further excepted and pleaded to the merits. When the case was called for trial plaintiff offered certain testimony in support of the allegations of her petition, whereupon "counsel for defendants objected to the evidence, and to any and all other evidence to be offered on behalf of plaintiff, in support of the allegations of her petition, upon the grounds and for the reasons: First. The plaintiff sues for the breach of a marriage contract, and the same petition shows the death of the promisor, Lazare Levy, and an action instituted against his heirs. This being shown on the face of the petition, no cause of action lies against the heirs, since the action for breach of promise is an entirely personal action, and not heritable. Second. If it could be contended that the action of breach of promise of marriage can be instituted against the heirs of Lazare Levy for a recovery of pecuniary or specific damages to the person or property of the plaintiff in this case, there is no averment of damage to property, but a simple averment of damage to the feelings of the plaintiff herein, therefore * * * no evidence whatever is admissible to support the demand of the plaintiff."

The court having sustained this objection, counsel for plaintiff announced that it was "impossible for them to proceed any further, inasmuch as they could not introduce any evidence to sustain the allegations of their petition," and, after some discussion as to the

118 La.—15

proper course to be pursued, the court "discharged the jury from any further consideration of the case, and ordered the plaintiff's demand dismissed, as in case of nonsuit," and from the judgment so rendered, plaintiff has appealed.

## Opinion.

It has been argued here that, plaintiff having declined to proceed, the judgment appealed from is to be regarded as having dismissed the suit for want of prosecution. We are, however, of opinion that the dismissal of the suit was the logical and inevitable consequence of the exclusion of the testimony offered and to be offered, in support of plaintiff's demand, and that the appeal from the judgment of dismissal brings up that ruling for review.

The obligation resulting from a marriage engagement, or promise of marriage, is personal, and not heritable, because no one but the obligee can enforce its performance, and it can be enforced against no one but the obligor. Civ. Code, art. 1996 et seq. The obligation to respond in damages for the breach of such contract springs from the contract itself, as one of the incidents of its obligations. Civ. Code, arts. 1763, 1930. Unless time be made of the essence of the contract, the obligor may comply with his obligation thereunder at any seasonable moment until he is put in default; from which it follows that, if the obligor die before compliance and before he is put in default, no action will lie to enforce compliance or to recover damages for noncompliance. In such case the obligation to respond in damages retains its status as a mere incident of the obligation to comply with the promise of marriage, and, as the principal obligation ceases to exist, its incidents cease likewise. The obligation to respond in damages may, however, lose its incidental character, and assume a new and independent form. Thus the obligee may obtain judgment against the obligor for the

damages, in which event the judgment could be enforced against the heirs of the obligor should he die before satisfying the same; or the obligor may abandon his right to comply with his promise, and voluntarily bind himself to pay the damages resulting from his noncompliance, and the obligation thus assumed could be enforced against his heirs. Or (and we now come to the position of the plaintiff before the court), the right of the obligor to comply with his promise of marriage may be forfeited, and his liability for damages fixed, by certain legal proceedings. The law provides that a contract may be violated "passively by not doing what was covenanted to be done, or not doing it at the time or in the manner stipulated or implied from the nature of the contract." Civ. Code, art. 1931. And that, in such case, "damages are due from the time that the debtor has been put in default," etc. Civ. Code, art. 1933. And specific provision is made as to manner of putting in default. Civ. Code, art. 1911 et seq. "The object of the putting in default [this court has said] is to secure to the creditor his right to demand damages, or a dissolution of the contract, so that the debtor can no longer defeat this right by executing, or offering to execute the agreement. After the debtor has been put in mora, his offer to execute his engagment comes too late and cannot be listened to. 6 Troullier, 255." Moreau v. Chauvin et al., 8 Rob. 161; Enders v. Gringras, Mulhaupt & Co., 38 La. Ann. 773; Clover v. Gottlieb, 50 La. Ann. 572, 23 South. 459. Plaintiff herein alleges that the promisor, Lazare Levy, was put in default; that is to say, that a demand was made upon him, as provided by law, to comply with his engagement to marry her; that he refused so to comply, and that she thereby sustained damages as set forth in her petition, and these allegations are taken as true, for the purposes of the case as now presented.

As a result of the putting in default, the obligation to marry, which could have been fulfilled by the obligor alone, became merged in the obligation to respond in damages for the nonfulfillment, since the right of the obligor to fulfill was thereby forfeited, and, considering the nature of the contract, specific performance could not have been enforced by the obligee. The obligation to respond in damages, from having been merely incidental to the other, became, therefore, the sole obligation left of the contract, and, being susceptible of fulfillment by another, as well as by the obligor, may be enforced against the heirs of the latter. In other words, the personal obligation, to marry, was resolved, by the putting in default, into the heritable obligation, to pay money, the amount of which may be determined by agreement, or suit.

Counsel for defendant argue that the right of action here asserted has not survived for the reason that the damages claimed are alleged to have resulted from injury to the feelings of plaintiff, rather than to her person or property. But the law of this state affords no support for the argument. It is true that the right to demand exemplary or vindictive damages (if such right be accorded by the civil law) perishes with the debtor, for the reason that such damages are awarded, over and above the amount necessary to compensate the injury complained of, by way of punishment to the wrongdoer and of warning to others, and could not, reasonably, be awarded against the unoffending heirs of the wrongdoer. The damages here demanded are, however, recognized by the law and jurisprudence of Louisiana as actual, or compensatory (Civ. Code, arts. 1930, 1934, subd. 3, 2315; Byrne & Co. v. Gardner, 33 La. Ann. 6; Ross v. Goldman & Bro., 36 La. Ann. 132; Dirmeyer v. O'Hern, 39 La. Ann. 963, 3 South. 132; Steinhardt v. Leman, 41 La. Ann. 838, 6 South. 665; Chaffe, Powell & West v. McKenzie, 43 La. Ann. 1069, 10 South. 369; Wimbish v. Hamilton, 47 La. Ann. 254, 16 South. 856; Fitzpatrick v. Pub-

lishing Co., 48 La. Ann. 1136, 20 South. 173; Lewis v. Holmes, 109 La. 1030, 34 South. 66, 61 L. R. A. 274; Graham v. W. U. Tel. Co., 109 La. 1069, 34 South. 91), and where, as in this case, it appears that the liability therefor is fixed (subject to the obligation of the claimant to prove his case) there is no reason why they should not be recovered in the same manner, and to the same extent, as damages to person or property. We are referred to decisions by courts in other jurisdictions holding a different view—some for one reason, and some for another—but none for any reason which finds support in the law of Louisiana. In the cases of Smith v. Sherman, 4 Cush. (Mass.) 408, and Wade v. Kalbfleisch, 58 N. Y. 282, 17 Am. Rep. 250, the courts based their decisions upon constructions of state statutes which are not before us. In Lattimore v. Simmons, 13 Serg. & R. (Pa.) 183, the court placed its denial of the right of the plaintiff, in the case before it, to recover from the heirs of the obligor (in a marriage engagement), for injury to feelings, upon the grounds: (1) that at common law the rule that a personal action dies with the person, extends to all actions for damages for wrongs attended with actual force, such as assault and battery and trespass, vi et armis, and to slander, and that it would be reasonable, as a deduction therefrom, to extend it to all cases, even though arising ex contractu, not predicated upon injury to person or property; (2) that, in the case before it, the court did not perceive that the property of the plaintiff was in any manner affected; (3) that, whether plaintiff's hopes and feelings would have been disappointed or gratified was beyond the reach of human scrutiny. The first ground has no application here for the reason that our Code of Practice provides:

"Art. 25. Heirs and universal legatees may be sued for civil reparation of the injury caused by the crimes and misdemeanors of the deceased whose succession they have accepted, although no action was instituted for that purpose against the deceased during his life, and, although neither he nor his heirs have benefited by such offense."

The injury thus provided for is not confined to that inflicted upon person or property, and it has been so held by this court in the latest case, to which we have been referred, in which the matter was considered. Dirmeyer v. O'Hern, 39 La. Ann. 961, 3 South. 132. The second ground is included in the first. We may say, however, in that connection, that the obligation of Lazare Levy to marry the plaintiff carried with it an obligation to maintain and provide for her, and, unless otherwise agreed, carried the right, so far as she was concerned, to share his earnings, and, in the event of his dying rich, and leaving her in need, to take a portion of his estate. As to the third ground; as our law provides that damages may be recovered for disappointed hopes and injured feelings, it would evidently be the duty of a court to hear a case presenting a claim for such damages, and determine the reach of human scrutiny after considering the evidence adduced. In Stebbins v. Palmer, 1 Pick. (Mass.) 71, 11 Am. Dec. 46, to which we are also referred by the learned counsel, we are informed by the brief that, after referring to the views expressed in Lattimore v. Simmons, supra, the court added that damages for injuries to feelings might be, and frequently are, vindictive, and, if decreed, might bankrupt the estate of the debtor, to the prejudice of his creditors. It seems to us, however, that the courts cannot be closed against a litigant claiming compensatory damages for fear that vindictive damages might be improperly awarded. We are further referred to the cases of Jones v. Succession of Hoss, 29 La. Ann. 564, and Edwards v. Ricks, 30 La. Ann. 926, decided by our predecessors in this court. In the case first mentioned suit was brought against the succession of the deceased administrator of an estate for damages alleged to have been sustained by reason of

the rejection of plaintiff's bid for the lease of certain premises offered for sale, by order of court, at public outcry, and part of the sum claimed was alleged to be due on account of the "malicious outrage and indignity" to the credit of plaintiff. The court held that the bid was properly rejected and that there was no "malicious outrage," etc., in the matter, and, after reaching that conclusion, said:

"That part of the demand which is based upon the alleged malicious outrage and indignity need not be seriously considered. Actions for such wrongs die with the wrongdoers, and they cannot be maintained against the heirs and representatives of the deceased even when they are well founded in fact."

In the case of Edwards v. Ricks, 30 La. Ann. 926, the suit was brought against Ricks and the widow and heirs of Varnado for damages inflicted by Ricks and Varnado in unlawfully dispossessing plaintiff's family of their dwelling. It does not appear that anything was claimed for injury to feelings, though it is to be inferred that such was the case, and the court seems to have proceeded upon the theory that such damages are vindictive and that it was so decided in the case of Jones v. Succession of Hoss. In so far, however, as the cases cited support that view the decisions must be considered as overruled.

For the reasons thus assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and this case remanded to the district court, to be there proceeded with according to law, and to the views expressed in this opinion; the costs of the appeal to be paid by the defendants, and all other costs to await the further action of the trial court.