ATKINS v. GARRETT.

(District Court, W. D. Louisiana.   July 16, 1917.)

No. 1075.

1. SALES ⊙⟳101—RESCISSION—GROUNDS—NONPAYMENT OF PURCHASE. PRICE.
   That, plaintiff seller filed suit for judgment on note given by defendant buyer for stock would not be an affirmance, estopping plaintiff, after dismissing such suit, from suing for a rescission for nonpayment of purchase price, in view of Civ. Code La. art. 2564, as to dissolution of sale taking place on nonpayment of purchase price.

2. SALES ⊙⟳96—SUIT FOR RESCISSION—INTEREST OF SELLER.
   That plaintiff, seller, prior to institution of suit for rescission, had disposed of identical certificate covering shares of stock sold to defendant, would not bar suit for lack of interest, where plaintiff owned other stock more than sufficient to cover shares sold to defendant, and defendant in said suit for rescission set up demand for damages for wrongful conversion and sale of certificate.

3. SALES ⊙⟳103—RESCISSION—CONDITION PRECEDENT.
   Tender of dividends received by seller on stock sold by him to defendant, and by defendant pledged as security for purchase price, was not a condition precedent to suit to rescind for nonpayment of purchase price.

4. SALES ⊙⟳99—RESCISSION—"OF RIGHT."
   Defendant, buyer, would not, four months after institution of suit by plaintiff, seller, for rescission for nonpayment of purchase price, have right to make payment of note given for purchase price and demand surrender of stock sold, but held by plaintiff as collateral, in view of Civ. Code La. art. 2564, as to dissolution taking place "of right"; that is, as a matter of course.

5. SALES ⊙⟳99—PLEDGES—RIGHT OF PRIVATE SALE.
   Civ. Code La. art. 3165, as to pledgee having no right to sell at private sale, where right so to do is not given, does not affect the right of pledgee, where stock was pledged to secure payment of purchase price, from exercising his right to demand a resolution of the sale for nonpayment of price.

In Equity.   Suit by J. W. Atkins against L. C. Garrett.   Judgment for plaintiff.

This is a suit at law for the rescission of a contract of sale of 50 shares of stock of the Lenzburg-Crichton Oil & Gas Company for nonpayment of the purchase price, represented by the note of the purchaser for $5,000, the payment of which was secured by the 50 shares of stock as collateral.   A trial by jury was waived and the case submitted to the court.

It appears from the admissions and the evidence adduced that on June 25, 1915, defendant, Garrett, who then lived at Mobile, Ala., by letter, purchased the stock in question from the plaintiff, Atkins, to whom he inclosed his 60-day note for the price.   On receipt of defendant's note, plaintiff wrote him that he had indorsed the certificate in blank and had written on the note, "This note secured by 50 shares of stock in the Lenzburg-Crichton Oil & Gas Company, certificate No. 136, for 50 shares," and that he had attached the note to the stock certificate and held the same subject to defendant's order.   The note was not paid at maturity, and finally, on September 8, 1915, plaintiff, Atkins, brought suit to recover judgment for the amount of the note, with interest, with recognition of his pledge of the stock, and ordering same seized and sold to satisfy the judgment.   Three days later this particular certificate No. 136 was disposed of by plaintiff, and he thereafter dismissed the pending suit for a moneyed judgment on defend-

ant's note, and on October 30, 1915, filed the present suit for rescission of the sale for nonpayment of the purchase price.

On February 1, 1916, defendant tendered plaintiff the amount of the note sued on, with interest and costs, which the plaintiff declined. Some further negotiations between the parties followed, and the plaintiff was told to leave the stock at the Commercial National Bank, and he accordingly left at the bank a certificate for 50 shares of stock, to be delivered to defendant on payment of the amount due; but the defendant declined to take the stock and pay the money to the bank, because the note sued on was not placed with the stock in the bank. The Lenzburg-Crichton Oil & Gas Company struck oil and prospered. Just after the purchase of the stock by defendant an 8 per cent. dividend was declared, yielding $400 on his 50 shares, which was paid to plaintiff, as were all subsequent dividends. These dividends aggregated 107½ per cent., more than sufficient, if credited on defendant's note, to pay the debt, with interest.

The defendant, alleging in his answer a conversion and disposition of the stock by plaintiff to other parties, claims that he has been damaged in the sum of $12,400, the value of the stock, plus $400 dividends collected by plaintiff prior to such conversion, with interest, less the amount of defendant's $5,000 note, with interest, for which amount he asks judgment, and, in the alternative, for judgment for 50 shares of the Lenzburg-Crichton Oil & Gas Company's stock, or its present value, plus the dividends paid on same, less the amount of his note, with interest.

S. M. Cook and Alexander & Wilkinson, all of Shreveport, La., for plaintiff.

Hardy, Grogan & Percy, of Shreveport, La., for defendant.

JACK, District Judge (after stating the facts as above). The right of the plaintiff to demand the rescission of the sale of stock for nonpayment of the note given for the purchase price is based on article 2564 of the Civil Code of Louisiana, which provides that the dissolution of the sale of movable effects shall take place of right, if demanded, on nonpayment of the purchase price.

[1] I. It is contended by defendant that the plaintiff, having elected to file suit for judgment on the note, could not thereafter dismiss such suit and sue for rescission of the sale. Counsel argues that this suit on the note was an affirmance of the contract, and plaintiff was thereby estopped from an action to annul. The authorities cited are from the common law, whereas the remedy invoked in this suit is peculiar to the civil law. "By the law of England," says Benjamin on Sales (book V, part 1, p. 622, of 2d London edition), "differing in this respect from the civil law, the buyer's default in paying the price will not justify an action for the rescission of the contract, unless that right be expressly reserved." Hence these common-law cases, in which the annulment of sales were sought on the ground of fraud or error, have no analogy to the case at bar, in which a sale originally in every respect valid and binding is sought to be rescinded, not because of any fraud in its inception and execution, but because of the purchaser's default thereafter in failing to pay the purchase price.

The plaintiff had the right to sue, either to enforce payment of the note, or for the rescission of the sale; but there is no reason why, having first resorted to the former remedy, he should be cut off from the latter, and in fact the Louisiana Supreme Court has so specifically held. Canal Bank v. Copeland, 15 La. 79.

[2] II. The fact that the plaintiff, prior to the institution of the present suit, had disposed of the identical certificate No. 136, covering the 50 shares of stock sold defendant, is no bar to the prosecution of this suit, because of lack of interest. Plaintiff, at the time he disposed of this certificate, and continuously for over a year after filing the suit, owned other stock more than sufficient to cover the 50 shares sold the defendant. It was not sacramental that he should have kept attached to defendant's note as collateral that particular certificate. A certificate is not the stock itself, but merely the evidence of it. As is said by Cook in his work on Corporations (4th Edition, section 469):

"One share of stock does not differ from another share of the same capital stock. Each is but an undivided interest in the corporate rights, privileges, and property. Accordingly it is held that a pledgee need not retain in his possession the identical shares of stock which were pledged to him, but the rights of the pledgor are fully preserved, if similar stock is retained by the pledgee until the termination of the pledge."

Counsel for defendant cites Barron v. Jacobs, 38 La. Ann. 370, and Castle v. Floyd, 38 La. Ann. 583, in which case it was held that plaintiffs were without interest to sue for the rescission of sales of real estate where, after such sales, they had sold their interest in the property to third parties. See, also, George v. Knox, 23 La. Ann. 354; Templeman v. Pegues, 24 La. Ann. 537. So, in the case at bar, were it not for the reconventional demand of defendants for damages for the wrongful conversion and sale of such stock, it might be that this plaintiff would be without interest to demand the resolution of the sale. But, in view of this reconventional demand, he certainly has a vital interest in sustaining his claim for rescission, and, while plaintiff's suit was, of course, filed prior to the reconventional demand of defendant, plaintiff's claim for rescission is, in effect, in defense to defendant's claim for damages.

[3] III. The plaintiff was under no obligation, as a condition precedent to his suit, to tender payment to defendant of the dividends received by him on the pledged stock. In McKenzie v. Bacon, 41 La. Ann. 6, 5 South. 640, it was held that the vendee of real estate, against whom a judgment of resolution of the sale has been obtained, owes to the vendor rents and revenues. If plaintiff is entitled to a rescission of the sale, he would be entitled to keep these dividends. The resolution of the contract would place the parties in the same position they were at the time it was entered into. The plaintiff would be entitled to a return of his stock, with its dividends, and the defendant would be entitled to the return of his note, without the payment of interest. (No interest has been paid on the note.)

[4] IV. I now come to the main issue in the case. Did the defendant, at the time of his tender, February 1, 1916, over four months after the institution of the present suit for the resolution of the sale, have the right to make payment of the note, demand the surrender of his stock held as collateral, and put an end to the litigation?

Ordinarily payment is the end of the law, and, as was said in the recent case of Watson v. Feibel, 139 La. 375, 71 South. 585, on which defendant relies:

"The resolution of the sale is allowed 'only after the vendor has exhausted every remedy for obtaining payment' [the court quoting from the French commentator, Toullier]. Can a vendor, to whom payment in principal, interest, and costs is tendered, and who refuses to accept, be said to have exhausted every remedy for obtaining payment?"

Again, in Perkins v. Frazer, 107 La. 393, 31 South. 774, the court said:

"The spirit of the law is against the enforcement of the resolutory condition, and in favor of the contract being carried out, if possible."

In the case of Watson v. Feibel, plaintiff, after making formal demand on defendant for the payment of the purchase price, the next day brought suit to rescind the sale. Defendant failed to answer within the time prescribed by law, and plaintiff caused a judgment by default to be entered against him. Thereafter, and before the judgment was confirmed, defendant made to plaintiff a tender of payment, which was refused for the reason assigned, that an offer of performance came too late after being put in default. The court, after a very thorough review of the jurisprudence and of the French commentators, reversed the decision of the lower court, rescinding the sale, and held that payment might be made at any time before final judgment.

In the Watson-Feibel Case, however, the sale was not of personal property, as in the case at bar, but of real estate, and, as the articles of the Code covering the two are not the same, the case is not decisive of the issue now before this court. Article 2561 covers the sale of both real and movable property:

"If the buyer does not pay the price, the seller may sue for the dissolution of the sale."

Article 2562 covers the case of the sale of immovables:

"The dissolution of the sale of immovables is summarily awarded, when there is danger that the seller may lose the price and the thing itself.

"If that danger does not exist, the judge may grant to the buyer a longer or shorter time, according to circumstances, provided such term exceed not six months.

"This term being expired without the buyer's yet having paid, the judge shall cancel the sale."

Article 2563 relates to the sale of immovables when the deed itself expressly contains the resolutory condition:

"If, at the time of the sale of immovables, it has been stipulated that, for want of payment of the price within the term agreed on, the sale should be of right dissolved, the buyer may nevertheless make payment after the expiration of the term, as long as he has not been placed in a state of default, by a judicial demand, but after that demand, the judge can grant him no delay."

Article 2564 relates to the sale of movable effects:

"In matters of sale of movable effects, the dissolution of the sale shall take place of right, if demanded, without its being in the power of the judge to grant any delay, except that fixed by law."

Referring to article 2564, it will be noted that the dissolution of the sale of movable effects shall take place "of right," if demanded. The

term "of right," it seems, has never been specifically defined. It occurs in the Constitution of the state and frequently in the articles of the Civil Code. Under the Constitution it is declared that:

"All government, of right, originates with the people, is founded on their will alone, and is instituted solely for the good of the whole." Article 1.

In article 248 of the Civil Code it is declared that:

"Tutorship by nature takes place of right."

And in article 2161 of the Civil Code it is provided that subrogation takes place "of right" in certain cases. In article 2399 of the Civil Code it is provided that:

"Every marriage contracted in this state superinduces of right partnership or community of acquêts on gains."

In article 2456 of the Civil Code it is provided:

"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."

It would seem that by the phrase "of right" is meant inherently, by reason of the law, as a matter of course, without the need of any specific agreement. The only condition included in article 2564, providing that the dissolution of the sale of movables shall take place "of right," is "if demanded." The following phrase, "without its being in the power of the judge to grant any delay except that fixed by law," must be construed in connection with article 2562, relative to the sale of immovables, by which it is provided that, where there is no danger of loss to the seller, the judge may grant to the purchaser further time to make payment, not to exceed six months. Article 2564 denies the judge such right in case of the sale of movables. It is not perfectly clear just what is meant by the final phrase "except that fixed by law." The defendant has all the delay fixed by law, without any action of the judge granting such delay. What is probably meant is that the purchaser has only such time to make payment as is allowed by law, and that the court can grant no further extension of time.

Referring to article 2563, relative to the sale of immovables, it will be noted that if, in the contract of sale of immovables, it has been specifically "stipulated that, for want of payment of the price within the terms agreed on, the sale should be of right dissolved," then that notwithstanding such stipulation the purchaser might nevertheless make payment after the expiration of the term up to the time that suit is filed, after which, the judge can grant no further delay.

If such a stipulation be written into a contract for the sale of immovables, then such sale of immovables is placed exactly on the same basis as is the sale of movables, for in the latter case the law writes into the contract the stipulation, in the words of article 2564 of the Code, that for nonpayment of the price "the dissolution of the sale shall take place of right, if demanded, without its being in the power of the judge to grant any delay, except that fixed by law."

Therefore it logically follows, and I conclude, that if, with this stipulation written into the contract for the sale of immovables by the parties themselves, the purchaser may not make payment after suit is filed for the resolution of the contract, neither can the purchaser of movable effects, where the law writes such provision into the contract, make payment after the filing of such suit. In other words, the sale of movables under article 2564 is by reason of the law governed by the same rule as the sale of immovables under article 2563 by reason of the stipulation of the parties.

This construction of the law is in line with the expression of the Louisiana Supreme Court in the case of Moreau v. Chauvin, 8 Rob. (La.) 161, which, however, may have been obiter as stated in the Watson-Feibel Case; but the case has several times since been referred to with approval, though in none of the cases was there presented the exact issue here involved. See Morrison v. Wimberly, 14 La. Ann. 713; Pratt v. Craft, 19 La. Ann. 130; City v. Rigney, 24 La. Ann. 235; Enders v. Gingras, 38 La. Ann. 773; Clover v. Gottlieb, 50 La. Ann. 568, 23 South. 459; Woodstock v. Pulley Mfg. Co.; 115 La. 829, 40 South. 236; Johnson v. Levy, 118 La. 447, 43 South. 46, 9 L. R. A. (N. S.) 1020, 118 Am. St. Rep. 378, 10 Ann. Cas. 722—all of which are reviewed in the Watson-Feibel Case, 139 La. 394, 71 South. 585.

[5] Counsel contends that as, under article 3165 of the Civil Code, it is specifically provided that, where the right to sell is not given the pledgee of stock, the pledgee, on the pledgor's failure to pay the debt, may not sell the stock at private sale, but must obtain judgment ordering its sale to pay and satisfy the obligation; that such is his sole remedy. I do not think this article was intended to affect the right of the pledgee in that particular class of cases, where the stock was pledged to secure payment of the purchase price, from exercising his right to demand a resolution of the sale. This right, as we have before seen, covers all property, both real and personal, and this latter article of the Code is not meant to form an exception, but merely to prohibit, without express agreement to that effect, the pledgee from taking the law into his own hands and selling the pledged stock to pay the debt.

If the stock had originally been delivered to the defendant, and not held in pledge for the payment of the latter's note, there is no doubt that the plaintiff could have sued for a resolution of the sale for nonpayment of the price, and his right certainly cannot be lessened by the fact that he holds the stock in pledge as security.

After repeated demands on defendant to pay, plaintiff finally sued him on the note. It was nearly two months thereafter before the suit for rescission of the sale was filed. Defendant was then in default; he had been given more than a reasonable time after demand in which to pay. The sale was then subject to rescission "if demanded," and the tender of payment after suit for rescission was filed came too late.

For these reasons, judgment will be signed and entered, rescinding the sale, and rejecting defendant's demands in reconvention.