(106 So. 720)

No. 27222.

### SOUTHPORT MILL, Limited, v. ANSLEY.

(Nov. 30, 1925. Rehearing Denied Jan. 4, 1926.)

*(Syllabus by Editorial Staff)*

1. **Vendor and purchaser** ⬤⟫104—Sales; evidence held not to warrant exercise of discretion to grant further time to perform agreement to purchase property or to remand case for further hearing.

Evidence showing that purchaser was allowed over 5 months to comply with agreement to purchase property before being put in default, but made no effort to perform for another 10 months, *held* not to warrant exercise of discretion to grant further time for performance with which court may be vested under Rev. Civ. Code, art. 2047, nor to warrant remand of case for further hearing on facts occurring nearly a year after suit was filed

and nearly 7 months after decision by trial court.

2. **Vendor and purchaser** ⬤⟫3(4)—Sales; letter held to be an offer to sell land and on acceptance to become a promise to sell.

A letter offering to sell property, not purporting to transfer title, but contemplating a formal deed of sale, puts seller under no obligation to deliver until price is paid, in view of Rev. Civ. Code, art. 2487, but is a mere offer to sell, which, on acceptance, becomes a promise to sell, not a sale.

3. **Vendor and purchaser** ⬤⟫75—Sales; party in default not entitled to delay to perform commutative contract as a matter of right.

Since, under Rev. Civ. Code, arts. 2046, 2047, the dissolution of a commutative contract defined in article 1768, may be demanded, not *only by* direct action, but also by exception, in action on the contract the party in default is not entitled to delay in which to tender performance before final judgment as a matter of right, but may be given further delay at discretion of judge.

4. **Vendor and purchaser** ⬤⟫75—Sales; in completed sale, purchase price may be paid as matter of right until judicial demand.

Under Rev. Civ. Code, arts. 2561–2563, in a completed sale of immovable property, a purchaser is entitled as a matter of right in all cases to pay purchase price until judicial demand, but not later, with right in judge to grant him further delay, where sale does not provide for dissolution as of right.

5. **Vendor and purchaser** ⬤⟫104—Sales; only effect of contract declaring sale dissolved of right on nonpayment is to waive formal putting in default.

Since, under Rev. Civ. Code, art. 2563, purchaser in sale of property has right to pay after expiration of term for payment, the only effect of a contract declaring sale to be dissolved of right on nonpayment is to waive putting in default which is otherwise necessary before *suing* for dissolution of contract, in view of articles 1911, subd. 1, and 1912.

6. **Vendor and purchaser** ⬤⟫75—Sales; in sale of property, right of purchaser to pay continues until judicial demand, whether contract dissolves sale of right or not.

In sale of property, regardless whether contract declares sale to be dissolved of right on nonpayment, the right of purchaser to pay continues until judicial demand, the only difference being that, where there is no such provi-

sion, the judge may still grant a delay for payment under Rev. Civ. Code, art. 2562, whereas with such a provision he is forbidden to do so under article 2563.

### Addendum.

7. **Vendor and purchaser** �824*75—Sales; **prohibition to grant delay in actions to rescind lease for nonpayment of rent held not to give purchaser in default in other cases right to tender performance without being granted delay.**

Fact that judge cannot grant a delay in actions to rescind a lease for nonpayment of rent under Rev. Civ. Code, art. 2729, does not give party in default in other cases right to tender performance at any time before final judgment dissolving contract to purchase property, without need of a delay granted by judge.

Appeal from Twenty-Second Judicial District Court, Parish of St. Tammany; Prentiss B. Carter, Judge.

Action by Southport Mill, Limited, against Mrs. Eugene Ansley. Judgment for plaintiff, and defendant appeals. Affirmed.

Donelson Caffery, Paul A. Sompayrac, and Anna C. McCay, all of New Orleans, for appellant.

T. M. & J. T. Burns, of Covington, and Miller, Miller & Fletchinger, of New Orleans, for appellee.

ST. PAUL, J. On July 26, 1923, the plaintiff offered to sell to George G. Friedrichs a certain island in Lake Pontchartrain, known as Isle des Coquilles, or Prevost Island, for the price of $100,000, payable cash. On October 10, 1923, Friedrichs accepted said offer, and notified plaintiff that he had assigned his rights to the defendant, who had deposited in his hands $10,000 on account of the purchase price; one-half of which he retained as a commission on the sale, and the other half he sent to plaintiff.

After various delays and vain efforts on the part of plaintiff to get defendant to take title to the property and pay the balance of the purchase price, during which delays de-fendant was accorded free access to the property, plaintiff finally notified defendant in writing on March 21, 1924, that she must appear and take title to the property on March 28, 1924, otherwise "we shall consider the contract terminated, and will retain the payment made on account, according to law."

To this communication defendant paid no other attention than to cause to be inscribed on the records of St. Tammany parish, where said island lies, the aforesaid offer to sell and acceptance thereof, and an affidavit stating her claims thereunder. She did not appear on March 28th to take title to the property and pay the balance of the price, and thereafter she was excluded from entering the property.

### I.

On October 8, 1924, plaintiff filed suit in said St. Tammany parish to have the court decree the dissolution of the agreement aforesaid and the forfeiture of all rights thereunder by defendant, and to direct the cancellation of said inscription as a cloud upon plaintiff's title.

On October 18th defendant filed an exception to the jurisdiction of the court.

On November 19th her plea to the jurisdiction of the court was overruled.

On November 20th a default was entered against her.

On November 29th she applied to this court for a writ of prohibition against the trial judge, on the ground of want of jurisdiction, which application this court denied (No. 26958 of our docket).

On December 1st she filed an exception of no cause of action.

On February 11, 1925, defendant filed her answer, wherein she set up that said contract constituted a completed sale, she being merely indebted to plaintiff for the balance of the purchase price; and, in the alternative, should it be held that said contract was only a promise of sale, then she

did not desire to recede therefrom, and "she now tenders full and complete performance under said contract and (avers) a willingness to accept title to said land and complete the payment of the purchase price due," and asking that the court should fix "a reasonable time, not less than 60 days from the finality of the decree in this case, wherein defendant may take said title and complete said payment," and she prayed that plaintiffs demand be rejected and its suit dismissed, and, in the alternative, if it be held that defendant is not the owner of the land, and the contract be only a promise of sale, then that defendant's tender of performance be accepted, and that she be given 60 days from the date of final judgment to complete the sale and pay the balance of the purchase price.

On that same day she reserved a formal bill of exception to the overruling of her plea to the jurisdiction, and thereupon the case went to trial.

On March 9th the trial judge gave judgment for plaintiff as prayed for. On March 12th said judgment was duly signed.

On March 13th defendant prayed for and was allowed a suspensive appeal to this court, which appeal was duly perfected and lodged in this court on April 29th.

## II.

On May 1st plaintiff sought and obtained an order from this court that the appeal be fixed for advanced hearing.

On July 27th the case was posted for a hearing on October 7th, but was not reached that day.

On October 8th defendant filed in this court an affidavit setting forth that on October 6th she had tendered plaintiff $90,000 in payment of the balance of the purchase price, and $10,000 additional to cover any damages and expenses incurred by plaintiff; wherefore she prayed that plaintiff be condemned to accept her said tender and com-

plete the sale, and, in the alternative, should this court deem itself unauthorized to consider and act upon evidence offered for the first time here, then that this case be remanded for the purpose of receiving said evidence.

On October 15th the appeal was heard before this court, and defendant argued orally both the merits of her case and also her plea to the jurisdiction of the district court of St. Tammany parish, citing in support of her said plea George v. Lewis, 11 La. Ann. 654. On that day the appeal was submitted and taken under advisement by this court.

On October 27th defendant filed in this court the following waiver, to wit:

"It is charged by plaintiff, without any justification whatever, that defendant has put the property in controversy hors de commerce and has adopted dilatory tactics to keep the title thereof tied up in a long litigation.

"Now, therefore, to refute that charge even more completely than it has already been, by the showing in the record, and to enable your Honors to speedily dispose of the issues herein, defendant now waives the exception which she filed herein to the jurisdiction of the District Court of St. Tammany Parish, and submits herself thereto and prays that your Honors proceed forthwith to pronounce judgment upon the merits of the case."

## III.

[1] From the foregoing it will be seen that defendant was given 5 months and 18 days (October 10, 1923, to March 28, 1924) to comply with her agreement before she was formally put in default thereon; that from the time of her putting in default to the time of filing her answer in the district court a further delay of 10 months and 14 days elapsed (March 28, 1924, to February 11, 1925), during which she made no attempt to take title to the property or pay the purchase price thereof, and at the end of which she was still asking for a reasonable delay in which to take the title and pay the purchase price, to wit, 60 days from the date of *final judgment* in the case.

It is therefore apparent that there is nothing in the circumstances of this case which ought to appeal to a court to exercise any discretion with which it may be vested under article 2047 of the Revised Civil Code to grant, "according to circumstances," further time for the performance of an obligation. Nor do we think there can be any equity urging this court to remand the case to the lower court to receive evidence and dispose of it on facts occurring a full year, less 2 days, after the suit was filed (October 8, 1924), and nearly 7 months after the case was decided by the court below (March 9, 1925).

Accordingly this case presents only one question, to wit, whether defendant is *of right* entitled to tender performance of her obligation even after having been formally put in default and until *final judgment* decreeing the dissolution of the contract.

### IV.

[2] At the outset it may be observed that here there was no *sale*. The letter addressed to Friedrichs was a mere *offer to sell.* It did not purport to transfer title. Plaintiff was under no obligation to deliver until the price was paid (R. C. C. art. 2487), and the parties had in contemplation a formal deed of sale to be executed should the offer to sell be accepted. It was, when accepted, a mere promise to sell, not a sale. In Trichel v. Home Ins. Co., 155 La. 459, 99 So. 403, this court said:

"A promise of sale differs widely from a sale; it does not transfer the ownership of the thing, but gives only the right to demand specific performance."

And again:

"Any agreement for the sale of real estate, which is not intended to be the final writing between the parties, but, on the contrary, to be followed by another and final deed, is a mere promise of sale and not a sale, and does not transfer the title to said property; unless it clearly appears that the parties contemplated that the new deed should be only *a confirmation* of the first, and not indispensable for the transfer of title."

This, therefore, is not an action to dissolve a sale for nonpayment of the price, but an action to dissolve a *commutative contract* wherein plaintiff agreed to give the property in consideration of defendant's promise to give the price when delivered (R. C. C. art. 1768); and the decision of this case hinges on the provisions of R. C. C. arts. 2046, 2047, not on those of articles 2561, 2562, 2563, R. C. C.

Nevertheless those articles may throw light upon the meaning of articles 2046, 2047, R. C. C., and may be considered in seeking that meaning.

### V.

[3] Articles 2046 and 2047 (corresponding with article 1184 of the Code Napoleon) read as follows:

"Art. 2046. A resolutory [dissolving] condition is implied in all commutative contracts, to take effect, in case either of the parties do not comply with his engagements; in this case the contract is not dissolved of right; the party complaining of a breach of the contract may either sue for its dissolution, with damages, or, if the circumstances of the case permit, demand a specific performance.

"Art. 2047. In all cases the dissolution of a contract may be demanded by suit or by exception; and when the resolutory condition is an event, not depending on the will of either party, the contract is dissolved of right; but, in other cases, it must be sued for, and the party in default may, according to circumstances, have a further time allowed for the performance of the condition."

Since the dissolution of the contract may be demanded not only by direct action but also *by exception* (i. e., by way of defense to an action on the contract), it follows that the party in default cannot always have the absolute right to perform his obligation until the final judgment dissolving the contract. Otherwise the right to plead the default of the plaintiff as a defense against his

action on the contract would be a vain and useless right where plaintiff offers to perform when bringing his suit, as he must do in order to state a cause of action. And since in such cases the offer to perform would always anticipate any judgment of dissolution, it follows that the exception would always be unfounded, which would result in convicting the legislator of an absurdity.

But the corresponding article of the Code Napoleon (No. 1184) does not provide that the dissolution of the contract may be demanded by way of exception or defense. On the contrary, it provides that the dissolution of the contract shall be demanded by the party who is not in default, and emphasizes this by providing that a delay may be accorded, not to "the party in default," as in our Code, but *"to the defendant."*

Hence we may well see how the French commentators have been led to hold that the party in default has always the right to tender performance until final judgment dissolving the contract, for the party who is not in default has not been given by their Code the right to set up the dissolution of the contract by way of defense as given by our Code.

In other words, the French Code declares that, notwithstanding the default of one of the parties, the contract none the less continues in force until set aside by direct action brought by the other party, and does not give that other party the right to set up that default by way of defense; whilst on the other hand our Code does allow that default to be pleaded as a defense even before judgment decreeing the dissolution of the contract, reserving, however, to the courts the right to grant further time "to the party in default."

Hence the courts of this state have repeatedly exercised their prerogative to grant or refuse delays to parties in default, where the circumstances justified it or the ends of justice would thereby be subserved. See Turner v. Collins, 2 Mart. (N. S.) 605; Laville v. Rightor, 17 La. 303; Chalon v. Walker, 7 La. Ann. 477; Charpaux v. Bellocq, 31 La. Ann. 164; Perkins v. Frazer, 107 La. 390, 31 So. 773. But see Lalaurie v. Cahallen, 2 La. 401, where it was held that the court was not bound to grant a delay; manifestly therefore the party in default is not entitled to it *of right.*

And until the case of Watson v. Feibel, 139 La. 375, 71 So. 585, it had been the uniform jurisprudence of this court that a formal putting in default cut off absolutely any *right* on the part of the one in default to tender performance thereafter, although *the court* might still grant such delay as equity might require. Moreau v. Chauvin, 8 Rob. 161; Morrison v. Wimberly, 14 La. Ann. 713; Pratt v. Craft, 20 La. Ann. 291; City of N. O. v. Rigney, 24 La. Ann. 236; Enders v. Gingras, 38 La. Ann. 773; Clover v. Gottlieb, 50 La. Ann. 568, 23 So. 459; Woodstock Iron Works v. Standard Pulley Co., 115 La. 829, 40 So. 236.

In Watson v. Feibel, supra, the defendant failed to pay the purchase price of a sale of real estate. He was put in default, and suit to rescind was filed next day. He then immediately tendered the price, and at once renewed the tender in his answer.

It was a case in which, as said in Perkins v. Frazer, 107 La. 391, 31 So. 774, "no court on earth (having discretion to allow a contract to be performed after default) would have refused this permission to defendants."

The case might therefore have been disposed of without further comment, and in accord with many precedents to be found in our jurisprudence as given above. But the learned organ of the court, in an exhaustive opinion, reviewed the French commentators, and approved of their dicta that a party, though put in default, had still *the*

*right* to perform at any time before final judgment dissolving the contract, and *even pending an appeal from such judgment.*

These commentators, however, were writing upon a statutory provision of the French Code (C. N. 1184), which, we have said, differs from the provisions of our own Code, and which *may* perhaps justify their opinions. But nevertheless, mindful of the text of these writers, we have made a research into the jurisprudence of the French courts, but *have not found even a single decision* in which those courts have so decided, though we find nothing to the contrary. On the other hand, we do find that the High Court of the Netherlands, passing on an article of the Holland Code similar to that of the Code Napoleon, has *not* followed the French commentators, but has taken the same view that this court has repeatedly taken—that the putting in default cuts off *the right* to tender performance thereafter, holding that the judgment of the court was necessary only to *declare* the dissolution and not to operate it. See Haute Cour des Pays Bas, December 14, 1893; Journal du Palais 1894, part 4, page 29; Sirey 1894, 4, 29; Dalloz 1895, 2, 362.

### VI.

We have said that articles 2561, 2562, 2563, R. C. C., have no special application to this case, although they might serve to throw light on R. C. C. art. 2047. But, if they have any application, then the case is all the stronger against defendant.

[4] Article 2561 declares that a sale may be dissolved for nonpayment of the price. Article 2562 allows the judge to grant the purchaser a further delay, when there is no danger of the vendor losing both the thing and the price. Article 2563 reads as follows:

"Art. 2563. If, at the time of the sale of immovables, it has been stated that, for want of payment of the price within the term agreed on, the sale should be of right dissolved, the buyer may nevertheless make payment after the expiration of the term, as long as he has not been placed in a state of default by a judicial demand, but after that demand, the judge can grant him no delay."

[5] Since the purchaser has still the right to pay after the expiration of the term given for payment, even though the contract declare that the sale shall be dissolved of right, it follows that the only effect of such a clause in a contract is merely to waive a formal putting in default; such putting in default being otherwise necessary before suing for a dissolution of the contract. R. C. C. arts. 1911, subd. 1, and 1912.

Hence it follows that, after a putting in default of the purchaser under a contract, which contains no such clause, the vendor is precisely in the same position as if such clause had originally been inserted in the contract, since in either case his only right is to sue for the dissolution of the sale; the contract being no more dissolved *of right* in the one case than in the other.

[6] But clearly in either case the *right* of the purchaser to pay continues only until judicial demand, for in either case the vendor has already acquired the right to dissolve the contract, in the one case by the terms of the contract and in the other by the putting in default (R. C. C. art. 1912), and the only difference in the two cases is that, where there is no such clause in the sale, *the judge* may still grant a delay for payment (R. C. C. art. 2562), whilst with such a clause he is forbidden to do so (R. C. C. art. 2563).

### VII.

Our conclusion is that in completed sales of immovable property a purchaser is entitled *of right* in all cases to pay the purchase price until judicial demand, but no later, with the right in the judge to grant him further delay in cases where the sale does not provide for a dissolution of right, and that in all other commutative contracts the delinquent party has *no right* to tender per-

formance after being put in default, but may be given further delay at the discretion of the judge, even though not entitled thereto of right.

In the case before us the trial judge saw no just grounds for allowing any further delay to defendant, and we do not see that he erred.

### Decree.

The judgment appealed from is therefore affirmed.

### Addendum.

[7] Since the above was written, we have been handed a supplemental brief by defendant, in which she directs our attention to the fact that in actions to rescind a lease for nonpayment of the rent the judge *cannot* grant any delay in the dissolution thereof. R. C. C. art. 2729.

This simply furnishes another instance in which *the judge* is forbidden to grant a delay to the party in default. But it affords no support for the proposition that in other cases the party in default *has the right* to tender performance of his obligation at any time before final judgment dissolving the contract, even without the need of a delay granted by the judge.