BRUNOT, J.
 

 This suit is based upon a contract for the sale of certain real estate. It is alleged in the petition that plaintiff gave the defendant a promissory note for $1,900, as earnest money, to hind the sale. • The suit is for double the alleged earnest money, or, in the alternative, for damages.
 

 Exceptions were filed and overruled. For answer to the petition the defendant denies that the promissory note was given to secure the sale. She 'alleges that it was given instead of a second mortgage which plaintiff had agreed to execute in her favor as soon as title to the property had passed to him
 
 *338
 
 through the Audubon Homestead Association, and upon the execution of said second mortgage the note was to be returned to the plaintiff.
 

 The case was tried and a judgment was rendered ordering defendant to deliver the note for $1,900 to the plaintiff, and rejecting all other demands of plaintiff. From this judgment the plaintiff appealed.
 

 There are two clauses in the contract which pax-ticularly refer to the $1,900 promissory note. They are as follows:
 

 “This contract and agreement is made and entered into by and between Mrs. H. Labe, hereinafter known as the party of the first part, and William L. Wright, hereinafter known as the party of the second part, whereby party of the ^#:st part agrees to sell to party of the second part and party of the second part agrees to purchase the duplex at 2428-2430 General Taylor St., this city, for the price and sum of ninety-nine hundred dollars ($9,900.00) payable as follows:
 

 “Eight thousand dollars cash on the day the party of the first part transfers the said property to the Audubon Homestead, and the balance of nineteen hundred dollars ($1,900.-00) represented by one promissory note to be identified with an act of mortgage, it being understood and agreed by all parties that the nineteen hundred dollar mortgage will operate as a second mortgage; the first mortgage is not to exceed ten thousand five hundred dollars, to be in favor of the Audubon Homestead Association. The said nineteen hundred dollars to be payable at the rate of fifty dollars a month, bearing 7% per annum interest. First payment to become due one month after the date of the note. * * *
 

 “Party of the secoxxd part hereby agrees to authorize the Audubon Homestead to keep this property in its own name until the remodeling has been completed, and the said Wright agrees that at the time of the transfer of the title from the Audubon Homestead, to Wright or to any one else, that a secoxxd mortgage note of $1,909.00 will be executed and delivered to her in the same act, and in the meantime Wright executes and delivers to Mrs. Labe his promissory note in the sum of $1,909.00 payable on demand, and indorsed by W. G. Day, and this note is to be converted into the second mortgage of $1,900.00 above referred to, and W. G. Day agrees to indorse said mortgage note, and makes himself a party to this agreement, and binds himself therer to.”
 

 The record shows that W. G. Day represented W. L. Wright in all of the preliminaries leading up to the execution of the agreement from which we have qixoted; that Wright was to secure a loan of $10,500 from the Audubon Homestead Association on the property, provided he would expend not less than $2,000 in improving it; that out of the loan of $10,500 from the Audubon Homestead Association Wright was to pay to Mrs. Labe $8,000, the cash portion of the purchase price of the property, and to pay Tasker Watts, contractor, $1,600, a part of the contract price for improving the property; that, upon a survey of the property, it developed that defendant’s building, at one corner, projected over the line of her property about one foot, and the eaves of the roof a little more than two feet; that when this fact was ascertained it was agreed between the parties that the plaintiff would purchase from the .abxxtting property owner sufficient ground to take care of that situation, and that the cost of the required strip' of land should be borne by the plaintiff and defendant in a pi’oportion agreed upon; that the negotiations for the purchase of said strip of land xvere handled by the plaintiff, through his attorney; that the owner of the abutting lot was a sick man at the
 
 *340
 
 time; that plaintiff’s attorney prepared a power of attorney authorizing the sale of so much of the abutting lot as the first survey showed to be necessary, which was properly executed by the owner; that a second and third survey showed that more land was required than the owner, in his power of attorney, authorized to be sold; that plaintiff’s attorney prepared a second power of attorney including the additional land required, which was signed by the owner but was not executed before a notary public; that a date and hour was then set for the execution of the transfers -of the Labe property and of the strips of land from the abutting proprietor; that Mrs. Labe appeared before the notary of the Audubon Homestead Association, at the time set, to comply with her obligation, to transfer her property, when she was informed by the notary that the second power of attorney given by the owner of the strip of land to be conveyed was defective and the Audubon Homestead Association would not accept a transfer under it; and that‘the defendant, after waiting at the office of said notary 45 minutes for the plaintiff, returned to- her home, and since that time no demand has been made upon her to comply with any of the obligations assumed by her in the. agreement to sell her property to the plaintiff.
 

 It is shown that the owner of the abutting lot died before a properly authenticated power of attorney was executed, and it does not appear that the plaintiff 'thereafter made any attempt to secure title to the strip of ground from the widow and heirs of the deceased, although the loan from the Audubon Homestead Association was predicated upon plaintiff acquiring that strip of land.
 

 Plaintiff contends that, because the defendant could not deliver all of the land which was occupied by the building, it was impossible for her to comply with her agreement, and therefore putting her in default would have been a vain and futile act. Plaintiff overlooks his supplemental agreement to purchase the necessary additional land from the abutting proprietor to bridge that situation, and he overlooks the fact that the transfer of defendant’s property to the Audubon Homestead Association was indefinitely postponed or defeated, not by the defendant, but by his own laches, first in obtaining an incorrect survey of the property, and thereafter in securing a defective power of attorney from the abutting proprietor. Under these circumstances, and because
 
 time of performance
 
 was not the essence of the contract between the parties, the doctrine announced in Watson v. Feibel, 139 La. 375, 71 So. 585, applies to this case, as modified by Southport Mill v. Ansley, 160 La. 131, 106 So. 720.
 

 Under that doctrine the defendant would have the right to perform, even after being put in default.
 

 Plaintiff contends that the promissory note for $1,900, given by him to the defendant when the agreement to sell was signed, is earnest money. The wording of the agreement is destructive of that contention. It is an unusual, but an irrevocable, contract, and, in view of the supplemental agreement of the parties to it, specific performance of the contract is enforceable. Moreover, the contract expressly provides that the note was merely intended to serve as a guaranty that, when the title to the property was eventually transferred by the Audubon Homestead Association to the plaintiff, or to such person as he might designate, the then holder of the title would execute a second mortgage upon the property, in favor of the defendant, for $1,900, and when this was done the promissory note was to be returned to the plaintiff.
 

 “Earnest, in the civil law», is a sum of money which one of the contracting parties
 
 *342
 
 delivers to the other at the time of the contract, and is .presumed to be a forfeit, in the absence of evidence that the parties then and there intended to bind themselves by an irrevocable contract.” Legier v. Braughn, 123 La. 463, 49 So. 22; Words and Phrases, First Series, vol. 3, p. 2302.
 

 Where earnest money is given, either party may recede from the contract; the giver by forfeiting the deposit and the receiver by returning twice that sum. C. C. art. 2463.
 

 Plaintiff has cited six authorities holding that an agreement to sell with a deposit to become a part of the purchase price is only an agreement to sell with earnest money. These authorities are of later date, and seem to overrule the earlier jurisprudence; but they have no application to a case where a note was not given as a part of the purchase price of property, but for another and different purpose.
 

 There is no satisfactory proof in the record upon which to base a judgment for damages. As we have seen, plaintiff contracted to buy the strip of land from the defendant’s abutting pz-oprietor. It was in furtherance of this purpose that the cost of surveys and attorney’s fees were incurred. There is in the record a proposal from Joseph L. Johnson to purchase the property at a sum in excess of the price plaintiff was to pay for it, but the proposal contains conditions relating to the proposed improvements to be made upon the property, the taxes thereon, the furnishing of a lien bond, and the time of delivery. It is not shown that this proposal was accepted. Moreover, as we have seen, it was the plaintiff’s laches which caused the Audubon Homestead Association to refuse to accept the title defendant was ready and willing to transfer to it.
 

 The judgment appealed from is correct, and, for the reasons stated, it is affirmed, at appellant’s cost.