## LANDRY v. HAWKINS (COMMERCIAL BANK OF LAFAYETTE & TRUST CO., Intervener).

### No. 1357.

Court of Appeal of Louisiana.
First Circuit.

Oct. 3, 1934.

Mouton & Davidson and Ed Meaux, all of Lafayette, for appellant.

Dan Debaillon, of Lafayette, for appellee.

ELLIOTT, Judge.

Mrs. Leah Landry, widow of Francois V. Comeaux, sold and delivered to Edwin J. Hawkins a certain tract of land with the buildings and improvements thereon. The act of sale bearing date, December 30, 1918, was passed before J. Gilbert St. Julian, notary public, and we will, for the purpose of our decision, assume that it was duly recorded in the mortgage and conveyance books. The price, $1,400, was represented by a note for the amount payable in twenty annual installments of $70 each. The vendor's privilege and a special mortgage were retained on the property by the seller and granted by the buyer securing the purchase price with interest and attorney's fees, etc.

On February 18, 1927, Hawkins and Delia Comeaux, his wife, executed a note for $5,500, payable to the order of and by themselves indorsed, and, in order to secure the amount in principal, interest, and attorney's fees, Hawkins granted a special mortgage by au-

thentic act on the property he had purchased from Mrs. Leah Landry, widow. This note was first held by the Bank of Lafayette & Trust Company, but this bank, with its assets, was taken over by Commercial Bank of Lafayette & Trust Company, and in that way the note became the property of the last-named bank.

Hawkins paid the installments due on the note held by Mrs. Landry up to and including the one due on January 2, 1930. In the meantime, the note for $5,500 not having been paid, the bank instituted foreclosure proceedings against Hawkins and seized and offered the several parcels of real estate for sale, which he had mortgaged to secure it, among them the property which he had acquired from Mrs. Leah Landry, widow. But before the day of sale arrived, Mrs. Leah Landry, widow, alleging the foreclosure proceedings instituted by the bank and the failure of Hawkins to pay an installment due on her note representing the purchase price, instituted suit against Hawkins to have the sale, which she had made to him, dissolved. The suit to dissolve was filed November 16, 1931. In her petition she prays that the sale be dissolved, and that the mortgage, which Hawkins had imposed on the property to secure the note for $5,500, be canceled.

Commercial Bank of Lafayette & Trust Company thereupon offered to pay Mrs. Landry the balance due her by Hawkins, but she refused to receive it. A preliminary default was entered up against Hawkins in favor of Mrs. Landry, widow, but before it could be confirmed, Commercial Bank of Lafayette & Trust Company intervened in the suit, opposed the confirmation of the default, again tendered her the balance due by Hawkins, and, upon being again refused, deposited the amount in the registry of the court and prayed for judgment against her and Hawkins compelling her to accept the payment offered and tendered in extinguishment of the debt. Mrs. Landry, widow, appeared and first urged, as an exception against the petition of intervention, a plea of estoppel on the ground that the tender last made had changed the substance of the demand, and as a further exception urged that the petition set forth no right or cause of action. The intervener amended its petition, upon which the plea of estoppel and' exception of no right or cause of action were overruled.

Mrs. Landry, widow, then answered the petition, denying that the bank was interested in the outcome of the suit between her and Hawkins, but, saving this denial, the aver-

ments of fact alleged in the petition but not the conclusions are admitted to be true.

The petition of intervention admits the averments of fact in the petition of Mrs. Landry, widow, against Hawkins, to be true, but not her conclusions. Hawkins never made any appearance in the case.

The lower court rendered judgment in favor of the intervener as prayed for in its petition, ordering Mrs. Landry, widow, to accept the tender made her by the bank in extinguishment of the debt due her by Hawkins without subrogation to her rights. Hawkins did not appeal. Mrs. Landry, widow, appealed.

The arduously prepared briefs of the parties have greatly interested and helped us in the examination of the case. For convenience and brevity we will refer to Mrs. Leah Landry, widow of Francois V. Comeaux, as Mrs. Comeaux and to Commercial Bank of Lafayette & Trust Company, intervener, as the bank. While the case was in the lower court, Jasper S. Brock, state bank commissioner, was substituted as intervener in place of Commercial Bank of Lafayette & Trust Company, with authority to prosecute the suit against Mrs. Comeaux for the benefit of the bank in the same manner as the bank could have done had it not been by him taken in charge. Mr. Brock, state bank commissioner, will also be referred to as the bank. The estoppel filed by Mrs. Comeaux is abandoned in her brief. Hawkins is the son-in-law of Mrs. Comeaux.

The property, which Mrs. Comeaux sold to Hawkins, is described in the act of sale from her to him as follows: "That certain tract of land containing eleven & $\frac{3}{100}$ superficial arpents with all the buildings and improvements thereon, situated in the 7th ward of the Parish of Lafayette, bounded northerly by a public road, southerly by lands of Clarence Comeaux and A. Savoie, easterly by public school property, westerly by S. P. R. R. Branch and being lot 13, acquired by vendor in act of partition between heirs of Francois V. Comeaux." The sale included all the improvements on the land, consisting of fences, residence, dining room, kitchen, corncrib, hay shed, and chicken coops. The act concludes with the following stipulation: "Purchaser declares, that he hereby grants unto vendor the use, usufruct and possession for the term of her natural life of the room presently occupied by her in the residence sold herein, being a south room next to the dining room and vendor accepts same in express terms." This stipulation is alleged by Mrs. Comeaux in her petition to dissolve as part of the consideration of the sale.

Mrs. Comeaux insists that the bank, legally speaking, has no interest in the outcome of the suit between her and Hawkins. The indebtedness of Hawkins to the bank on account of a note for $5,500, secured by conventional mortgage granted by him on the property purchased by him from her, is established without dispute. By selling him the property, she enabled him to mortgage it to the bank. A mortgage is a species of alienation and constitutes a real right on the property bound for the discharge of the obligation. Civ. Code, arts. 3282, 2012, 2010. "In order to be entitled to intervene, it is enough to have an interest in the success of either of the parties to the suit, or an interest opposed to both." Code of Practice, art. 390. "One may intervene either before or after issue has been joined in the cause." Code of Practice, art. 391. An interest in the bank opposed to both Mrs. Comeaux and E. J. Hawkins appears sufficient to justify the intervention.

Mrs. Comeaux contends that the tender in open court, made on condition that the bank be not subrogated to her rights, operates to change the substance of the demand. We find otherwise. The substance of the demand in our opinion is not changed and the tender in open court having been made in the name of the bank for the discharge of Hawkins on account of the purchase price of the property and on the express condition that the bank be not subrogated to the rights of Mrs. Comeaux. We see no ground for controversy on that subject.

Mrs. Comeaux contends that the petition of intervention sets forth no right or cause of action because the insolvency of Hawkins is not alleged. An averment that the debtor is insolvent is necessary in a revocatory action (Civ. Code, art. 1971), but the present is not a revocatory action and the rules governing such actions have no application. The purpose of the intervention is to compel performance on the part of Mrs. Comeaux of her undertaking to accept from a creditor of Hawkins a conventional mortgage on the property next in rank after hers, the price she agreed to take in the sale from her to Hawkins.

Mrs. Comeaux argues the case on the merits under her exception of no right or cause of action. Intervener argues the exception of no right or cause of action as substantially forming the merits. The situation under the pleadings is such, that when the lower court overruled Mrs. Comeaux's exception of no right or cause of action, he in effect decided the case against her on the merits.

The judgment, if not set aside, will constitute res adjudicata. In such cases, under the authority of Laenger v. Laenger, 138 La. 532, 70 So. 501, Interdiction of Giacona, 158 La. 148, 103 So. 721, Ducros v. St. Bernard Cypress Co., 164 La. 788, 114 So. 654, Ducre v. Milner, 169 La. 820, 126 So. 72, and other cases to the same effect cited in the brief of Mrs. Comeaux, the tender, which is resisted by Mrs. Comeaux, and the grounds urged by her in support of her exception of no right or cause of action form the merits of the case. We will therefore discuss all questions not already acted on as forming together the merits of the case.

Mrs. Comeaux's contention may be taken from her brief from which we copy commencing near the bottom of page 12: "* * * This is an action by the vendor seeking specific performance of his contract of sale, one of the implied terms of which is, that, if the purchase price is not paid, the property will be returned to him free from all subsequent alienations, privileges and mortgages subsequently affecting that title. This right of the vendor inherent in the contract of sale is an enforceable right and cannot be destroyed by a tender made by an inferior creditor of the purchase price due by the defendant after the institution of the action." Her contention is, that after the judicial demand by her made on Hawkins for the dissolution, he could not then defeat the action to dissolve by paying the balance of the purchase price and that the bank, his mortgage creditor, has no greater right than he has.

She depends on the provisions of title 7, Of Sale, chapter 7 of the Civil Code, bearing the prefix, "Of the Obligations of the Buyer," articles 2561 (amended Act No. 108 of 1924), 2562, and 2563 in particular, as supporting her position, and further contends that the rights of the buyer measure those of the creditor in the matter mentioned. These articles read as follows: Article 2561 (amended Act No. 108 of 1924), "If the buyer does not pay the price the seller may sue for the dissolution of the sale." The amendment adds the following: "This right of dissolution shall be an accessory of the credit representing the price, and if it be held by more than one person all must join in the demand for dissolution; but if any refuse, the others by paying the amount due the parties who refuse shall become subrogated to their rights." There is argument that the amendment may have some bearing on the present situation. We do not think the amendment has any bearing in so far as concerns the present case.

Article 2562 provides, "The dissolution of the sale of immovables is summarily awarded, when there is danger that the seller may lose the price and the thing itself. If that danger does not exist, the judge may grant to the buyer a longer or shorter time, according to circumstances, provided such term exceed not six months. This term being expired without the buyer's yet having paid, the judge shall cancel the sale."

Article 2563, "If, at the time of the sale of immovables, it has been stipulated that, for want of payment of the price within the term agreed on, the sale should be of right dissolved, the buyer may nevertheless make payment after the expiration of the term, as long as he has not been placed in a state of default, by a judicial demand, but after that demand, the judge can grant him no delay."

Articles 2561, 2562, and 2563 are special provisions, which speak "Of the Obligations of the Buyer," and provide that, after the seller has placed the buyer in default by a judicial demand, he can no longer defeat the dissolution by offering to pay the price. But the rights of third parties, creditors of the buyer, are not contemplated by these articles.

■ The contention that the right of the buyer is the measure of that of the creditor of the buyer, we find to be not well founded. We assume that Mrs. Comeaux relies for support in this matter on article 822 of the Civil Code, which says, "for no one can transmit to another more right than he has himself," and article 2015, "but the law establishes the rule that no one can transfer a greater right than he himself has," and Code of Practice, art. 23, which provides, "that no one can transfer a better title to another than that which he himself had." But these provisions have reference to property rights based on contracts and to inheritances claimed under the right of another and not to the court actions, which a creditor may take to subjugate the property of his debtor to the payment of his debts, when the debtor fails or neglects to take any, either from a motive to deprive his creditor of his recourse on his property or where he endeavors to favor one creditor over another or because he is financially unable to do as he would like. In such instances, the right of the creditor to act for the protection of his interest is not derived from the rights of the debtor but from the law. And the right of a creditor, holding a conventional mortgage on the property of his debtor, to protect his mortgage seems to evidently result from the provisions of the Civil Code.

The first article (2438) in title 7, Of Sale, provides: "In all cases, where no special provision is made under the present title, the contract of sale is subjected to the general rules established under the title: Of Conventional Obligations." There are articles in other titles stating general principles. For instance, "Whoever has bound himself personally, is obliged to fulfill his engagements out of all his property, movable and immovable, present and future." "The property of the debtor is the common pledge of his creditors," etc. Articles 3182 and 3183. "Not only the obligation, but the right resulting from a contract relative to immovable property, passes with the property." Civ. Code, art. 2011. But more direct provisions may be found in title 4, Of Conventional Obligations, c. 3, § 7, art. 1989, providing what contracts shall be avoided by persons not parties to them, in which it is said: "Not only contracts which dispose of property, but all others which are made in fraud of creditors, and deprive them of their recourse to the property of their debtor, come within the provisions of this section. The renunciation of a succession or other right to property, the release of a debt without payment, or any other act of this kind, may be avoided by creditors, when done to their prejudice, under the rules above established." Then follows article 1990 —"and they are authorized, by virtue of the action given by this section, to exercise all the rights existing in favor of the debtor for recovering possession of the property to which he is entitled, in order to make the same available to the payment of their debts."

In Succession of Baum, 11 Rob. 314, a party neglected to prosecute a right, the abandonment of which would have been prejudicial to his creditors. The creditors, taking the position that he was about to abandon it for the purpose of defrauding them, were allowed to intervene and prosecute it for their own benefit. We copy a part of the last section of the syllabus: "Plaintiff having commenced an action against a succession to cause himself to be acknowledged as the husband of the deceased, neglected for more than three years to take any steps in it, when certain creditors intervened, praying to be allowed to prosecute the action on the ground that the plaintiff was about to abandon it for the purpose of defrauding them. The latter subsequently attempted to discontinue, but his motion was overruled." Article 1990 was cited as authorizing the action of the creditors.

In State ex rel. Klein & Co. v. Pilsbury, 29 La. Ann. 787, we copy from the syllabus:

"Any third person, who demands no subrogation, may tender to a creditor, either in his own name, or in that of the debtor, the debt due by the latter, in whatever species of property the debt is payable, and compel the creditor to accept the payment in that property."

In Dilzell Engineering & Construction Co. v. Lehmann, 120 La. 273, 45 So. 138, 141, the court said: "By articles 1989 and 1990, Civ. Code, where, to the prejudice of his creditors, the debtor 'fails or neglects' to exercise any of his rights, the creditors may themselves exercise the right, 'in order to make the same available to the payment of their debts.' "

"A judgment creditor can legally sue for the recovery of his debtor's property in the hands of third persons, in order to make liable for his debt, and, for the purposes of his suit, he can legally assert all the rights of his debtor in and to the property." W. B. Spencer v. Goodman & Bradfield et al., 33 La. Ann. 898.

In another case, acting on a similar situation, the court said: "Otherwise, the creditor would be at the mercy of a defaulting and obstinate debtor, who might, by a refusal to join, or a neglect to assert rights involving his ownership and title to property and its possession, prevent the enforcement of just claims." Forstall v. Consolidated Ass'n of Planters of La., 34 La. Ann. 770, page 775.

In another, "The creditor can exercise all rights save those not merely personal, and where the creditor refuses to sue to set aside the lesion in a sale the action may be brought and sustained by a creditor." Belcher & Creswell v. Johnson, 114 La. 641, 38 So. 481. Language to the same effect is found in Adele Gernon et al. v. McCan, 23 La. Ann. 84; Brice v. Watkins, 30 La. Ann. 21; Ragsdale v. Ragsdale, 105 La. 405, 29 So. 906.

 The creditor, holding a conventional mortgage, has plenary right to perform, all except the strictly personal obligations of his debtor, which places in jeopardy the title of his debtor and his own conventional mortgage resting thereon.

"Obligations are extinguished: By payment." Civ. Code, art. 2130. "The obligation may even be discharged by a third person no way concerned in it, provided that person act in the name and for the discharge of the debtor, or that, if he act in his own name, he be not subrogated to the rights of the creditor." Civ. Code, art. 2134.

 In this case the offer to pay and subsequent tender were in the name of the bank and on condition that it be not subrogated to the rights of Mrs. Comeaux. Consequently, the payment will, in so far as concerns the $1,400 stipulated for in the act from Mrs. Comeaux to Hawkins, constitute performance of the obligation of the buyer as provided for in article 2131. But Mrs. Comeaux contends that the offer and tender and intervention on the part of the bank came too late, the debtor having been placed in a state of default by a judicial demand for the dissolution of the sale. We have already seen that the creditor does not derive his right of action from his debtor but from the law. The law creating the right of the creditor has not, according to our appreciation of its intent and language, provided that, after judicial demand made by the vendor on the buyer, the creditor of the buyer cannot offer to perform, tender payment in its own name and in that way extinguish the obligation.

In this case it is not stipulated in the act from Mrs. Comeaux to Hawkins that for want of payment of the price within the term agreed on, the sale should be dissolved of right, a fact to be taken into account. A further matter to be taken into account is the fact that there is no danger of losing the price and the thing itself. The price was offered by the bank and refused. It was then tendered in court and again refused, upon which it was deposited in the registry of the court. Giving effect to the provisions of articles 1989, 1990, 2134, the bank can protect its own mortgage by paying in its own name the balance due Mrs. Comeaux by Hawkins on account of the purchase price and in that way prevent the dissolution and maintain the title of its debtor, that being the only way in which his title can be maintained and its own mortgage saved and made good. As against a third party creditor of the buyer, the buyer's ownership is not terminated by the vendor's suit to dissolve. The sale ceases to exist only as the result of a dissolution formally decreed by the court and until its dissolution is actually ordered, payment by the mortgage creditor of the buyer is in time.

In this connection article 14 of the Code of Practice must be taken into account. "Every obligation gives, impliedly, a right of action to enforce its execution." The bank, having the right to perform, has a right of action to make the performance effective. There being no express provision of the law on the subject, a reasonable time in which to act will be recognized to exist in favor of the creditor after becoming aware; using ordinary diligence and giving proper attention to

matters that he ought to know, of the situation which makes it necessary for him to take action in the courts in order to protect his mortgage rights. In this case the action of the bank was in our opinion instituted timely.

Mrs. Comeaux urges that under the language of article 2135 a creditor can take no action unless some advantage result to the debtor. This article reads, "A third person may, for the advantage of the obligor, put the obligee in default, by offering to perform the obligation on the part of the debtor, even without his knowledge; but it must be for the advantage of the debtor, and not merely to change the creditor." Her position is that the tender and offer to perform, if permitted, will result in no advantage to Hawkins, and that, consequently, acceptance of payment from the bank should not be compelled. The obligation of Hawkins to Mrs. Comeaux will be extinguished by the performance tendered, but a further answer to her position is that the language used in article 2135 evidently refers to something undertaken of the kind mentioned in articles 2136 and 2137 and not to a payment such as we have been discussing.

As heretofore stated, Mrs. Comeaux alleges in article 3 of her petition that the reservation of a room in the residence on the land sold to Hawkins for her use during the rest of her natural life formed part of the consideration of the sale. No mention is made of this reservation in subsequent articles and the prayer of her petition is that the act be set aside in which this stipulation is contained and the property restored to her free and clear of any incumbrances placed thereon by Hawkins since the sale. There is no prayer for recognition of rights under the stipulation mentioned, based on Civil Code, Art. 617, in case her demand for the dissolution should fail. The object of the intervention is to defeat the dissolution, yet in her answer to the petition of intervention this stipulation is not mentioned and there is no alternative demand in her answer on the subject in case the demand of the intervener should prevail. The judgment appealed from shows that the case was tried on confirmation of default against Hawkins and on the intervention of the bank and her answer to the intervention, and judgment was rendered in favor of the intervener. The court did not give any reasons for his decision save the formal statement contained in the judgment. The subject of the stipulation referred to is not mentioned in Mrs. Comeaux's brief. It therefore appears that the stipulation was not an issue in the lower court between Mrs. Comeaux and intervener and was not acted on in deciding the case. It is therefore not involved in the appeal and the subject-matter is not before us for review.

The work of the attorneys in the examination and translation of the commentaries of eminent jurisconsults and decisions of the highest courts of France concerning the meaning of articles 2561, 2562, 2563, 2046, 2047, etc., of our Civil Code has been read with interest and taken into account. No decision of the Supreme Court of this state has been found bearing directly on the present issue. Watson v. Feibel, 139 La. 375, 71 So. 585, is the nearest approach. The conclusion of the court in that case was in one respect the subject of adverse remarks in Southport Mill v. Ansley, 160 La. 131, pages 140 and 141, 106 So. 720, but we do not find that the opinion in Watson v. Feibel, 139 La. 375, 71 So. 585, was overruled by the latter case, not even as to the phase, which was the subject of the adverse comment. As a matter of fact, the cases, Watson v. Feibel, 139 La. 375, 71 So. 585 and Southport Mill v. Ansley, 160 La. 131, 106 So. 720, involved issues between buyer and seller only and did not deal with a situation like the present where the issue is between the seller and an intervener, holding a conventional mortgage operating as a second mortgage on the property, and in which a mortgage creditor of the buyer claims the right to compel the seller to accept from it the balance due by its debtor on account of the purchase price in extinguishment of the obligation in order to maintain its debtor's title and thereby save and make good its own mortgage on the property.

We think the decision in the lower court voices the language and meaning of our Civil Code and should for the reasons stated be affirmed. With Jasper S. Brock, state bank commissioner, substituted for Commercial Bank of Lafayette & Trust Company, intervener, the judgment appealed from is affirmed. Mrs. Leah Landry, widow of Francois V. Comeaux, to pay the cost in both courts.