**BAILEY v. WADLEY et al.**

No. 5775.

Court of Appeal of Louisiana.
Second Circuit.

Nov. 4, 1938.

Rehearing Denied Dec. 9, 1938.

Writ of Certiorari and Review Denied.
Jan. 10, 1939.

John B. Files, of Shreveport, for appellants.

A. S. Drew, of, Minden, for appellee.

TALIAFERRO, Judge.

A proposition of law only is submitted by this appeal. It is this: Will the tender of the balance due on the purchase price of a sale of real estate, made subsequent to service but prior to judgment in a suit to rescind the sale on account of the non-payment of said part of the price, abate the action to rescind?

On November 15, 1934, J. K. Wadley and W. T. Gleason, defendants in the present rule, sold and conveyed to Walter F. Bail-

ey, plaintiff in rule the E.½ of N. E.¼ of Section 36, Township 23 North, Range 10 West, situated in Webster parish. The vendors reserved for a period of 15 years "all the oil, gas and/or other minerals contained in and being under said above described property," etc. The price of the sale was $500 of which amount $100 was paid in cash and the balance was stipulated to be paid in four equal annual installments with 8% interest from the date of deed, to evidence which installments the purchaser executed and delivered his four promissory notes. These were secured by a vendor's lien and special mortgage on the land. Bailey was unable to pay the note due on November 15, 1935, but did pay the accrued interest thereon, $8. An indulgence was granted to him to pay the principal. He was unable to pay any amount whatever in 1936, but did pay $100 in October, 1937. Of this amount $88 was applied toward the payment of all interest on the notes to November 15, 1937, and the balance of $12 credited on the principal of the note first maturing.

The mineral rights to the land, due to its proximity to subsequently proven oil-bearing territory, suddenly increased in value. To this fact may be largely if not entirely ascribed the motives impelling this triple-phased litigation.

On February 2, 1938, Bailey instituted a jactitation suit against J. K. Wadley in which he alleges complete ownership and physical possession of the land involved, and wherein he charged that Wadley had slandered and was continuing to slander his title thereto by holding himself out to be the owner ,of the oil, gas and other minerals in and thereunder; and further, that he on April 1, 1937, did execute an oil, gas and mineral lease to the Atlantic Refining Company covering the said land.

On March 18, 1938, Wadley and Gleason, through the latter, tendered to Bailey an amount in cash equal to that which he had paid on the purchase price of the land and his four unpaid notes, and requested that he reconvey the property to them, presenting at the time a form of deed to effectuate the transaction. Bailey refused to accept the tender or execute the deed. On the following day Wadley filed an answer to the jactitation suit and, by way of reconvention, in which Gleason joined as a plaintiff, instituted suit to rescind the sale by them to Bailey for nonpayment of the price, coupling therewith an additional

demand to have the sale rescinded on the ground and for the reason that by instituting and prosecuting the jactitation suit, Bailey "openly and wilfully violated the terms and conditions and consideration set forth in the deed" from them to him. The fact that prior tender of cash and notes to Bailey and a request for the execution of a retransfer to them is averred.

On March 24th the present suit was filed.

Inter alia, it is alleged therein that on March 18th, petitioner endeavored to pay to Gleason the balance due on said notes, but the offer was refused, and that on March 22, he tendered to Gleason, for himself and as agent for Wadley, cash money sufficient to extinguish the balance due on the notes, and the tender was by him refused; that he was still vested with the legal right to pay said balance due on the purchase price notes in order to prevent rescission of the sale to him, and was able and willing to do so. He tendered with his petition for the rule a cashier's check in an amount sufficient to pay said balance, and prayed that the defendants be ordered and required to accept the tender and to surrender the purchase price notes to the end that the lien and mortgage securing them might be erased from the records, etc.

Defendants generally denied all of the allegations of the petition for the rule. Further answering, they averred that Bailey had been in default on said notes since November 15, 1935, and that notwithstanding said default, he did, on February 2, 1938, institute said jactitation suit against respondents, the nature and object of which are at length described in the answer. Other allegations are made. These refer to and epitome some of the recent history concerning this controversy, already referred to by us; repetition of which we deem unnecessary.

The rule was made absolute, and the relief prayed for therein granted. From a judgment in keeping therewith, defendants bring this appeal. Proceedings in the jactitation suit were stayed until final disposition of this appeal.

It is admitted that no demand for payment of the notes involved herein was made upon Bailey prior to filing the rescission suit. He made no tender of the money to pay the notes to Gleason until two or three days after that suit was filed. He did inform Gleason on March 18, 1938, that he would contact him the following Monday for the purpose of making such payment, and kept the promise. The record negatives the allegation of Bailey that the notes had been specifically extended until November 15, 1938. However, the acceptance in October, 1937, of all interest to November 15, 1937, by Gleason and his general attitude toward the whole matter would certainly be calculated to induce Bailey to think and believe that he would not be disturbed in his possession and ownership of the land prior to the fall of 1938.

When he paid the $8 interest in 1935 and the $100 in 1937, and at other times, he was positively assured by Gleason that he and Wadley would never enforce the lien and mortgage they held against the land nor otherwise disturb him in his possession and ownership thereof, so long as he improved it, paid the taxes thereon and was doing the best he could to pay the notes. Their attitude toward him uniformly was that of liberal indulgence. Because Bailey filed the jactitation suit, it is asserted, this policy was changed.

It might be well to here interpolate that Gleason has no interest in the mineral rights involved in the jactitation suit.

We do not think the jactitation suit conferred on Wadley and Gleason the right to demand judicially a summary rescission of the sale of the land they executed to Bailey. He is not attacking the title to the land but is asserting ownership of the minerals specifically reserved and excluded from the sale. The pleadings in the jactitation suit do not disclose the theory upon which he conceives himself to be the owner of the reserved mineral rights, and for this reason and for the further reason that the issues of that suit have not been tried, we cannot prejudge the merits of his contentions. It is intimated that prior to the sale to Bailey, Wadley had disposed of the mineral rights in and to the land and that the reservation in the deed to Bailey was simply incorporated therein to protect him in his warranty obligations to his lessee or transferee. It is true, however, that in the jactitation suit it is alleged that Wadley gave a lease of said mineral right to a company on April 1, 1937, which is over two years subsequent to Bailey's deed.

Under the title "Of the Obligations of the Buyer," Civil Code, Article 2549, one of the primary obligations of the buyer is

to pay the price of sale; and Article 2561 of the same title says that: "If the buyer does not pay the price the seller may sue for the dissolution of the sale."

Article 2562 materially modifies the apparently peremptory· rule established by Article 2561, quoted above. It reads as follows:

"The dissolution of the sale of immovables is summarily awarded, when there is danger that the seller may lose the price and the thing itself.

"If that danger does not exist, the judge may grant to the buyer a longer or shorter time, according to circumstances, provided such term exceed not six months.

"This term being expired without the buyer's yet having paid, the judge shall cancel the sale."

█ It will be observed from the language of this article that the summary dissolution of a sale for nonpayment of the price is only awarded when there is danger that the seller may lose the price and the thing also. In the absence of such danger, the law tempers the rigidity of the rule and confides to the judge the right to grant the purchaser additional time in which to meet his obligation, not exceeding six months, dependent upon circumstances. Nothing is said in these articles about the conditions precedent to the right of the seller to seek a dissolution of the sale, save failure of the purchaser to pay the price. No reference is made to putting him in mora.

It is the contention of defendants in rule that since three of the notes were long past due, putting in default was not necessary precedent to filing suit to dissolve, and that that suit definitely fixed the status of affairs between the parties in such a way as to deny to Bailey the right thereafter to perform his obligation by paying the balance of the price. The question here presented, under identical or similar facts, has been made the subject of discussion in many cases in the jurisprudence of this state. Considerable confusion therein exists. The right of a defaulting purchaser to perform by paying the price after process has been served on him in a suit to rescind the sale is extensively discussed and considered in Watson v. Feibel, 139 La. 375, 71 So. 585, and in Southport Mills v. Ansley, 160 La. 131, 106 So. 720. The two cases cite practically every case in this state on the subject, pro and con.

In Watson v. Feibel, the Court, with Justice Provosty, a profound student of the French law, as its organ, overruling prior jurisprudence to the contrary, held squarely that the purchaser of immovable property was entitled as a matter of right to perform his obligation to pay the price at any time prior to judgment dissolving the sale for nonpayment of the price.

Justice St. Paul, .as the Court's organ, in the Southport Mills Case, expressly overruled the holding in Watson v. Feibel, mentioned above, although, as we view the Southport Mills Case, it was unnecessary to do so. The following excerpt from Justice St. Paul's opinion is quite illuminating‿ of the question [page 723]:

"We have said that articles 2561, 2562, 2563, R.C.C., have no special application to this case, although they might serve to throw light on R.C.C. art. 2047. But, if they have any application, then the case is all the stronger against defendant.

"Article 2561 declares that a sale may be dissolved for nonpayment of the price. Article 2562 allows the judge to grant the purchaser a further delay, when there is no danger of the vendor losing both the thing and the price. Article 2563 reads as follows:

" 'Art. 2563. If, at the time of the sale of immovables, it has been stated that, for want of payment of the price within the term agreed on, the sale should be of right dissolved, the buyer may nevertheless make payment after the expiration of the term, as long as he has not been placed in a state of default by a judicial demand, but after that demand, the judge can grant him no delay.'

"Since the purchaser has still the right to pay after the expiration of the term given for payment, even though the contract declare that the sale shall be dissolved of right, it follows that the only effect of such a clause in a contract is merely to waive a formal putting in default; such putting in default being otherwise necessary before suing for a dissolution of the contract. R.C.C. arts. 1911, subd. 1, and 1912.

"Hence it follows that, after a putting in default of the purchaser under a contract, which contains no such clause, the vendor is precisely in the same position as if such clause had originally been inserted in the contract, since in either case his only right

is to sue for the dissolution of the sale; the contract being no more dissolved of right in the one case than in the other.

"But clearly in either case the right of the purchaser to pay continues only until judicial demand, for in either case the vendor has already acquired the right to dissolve the contract, in the one case by the terms of the contract and in the other by the putting in default (R.C.C. art. 1912), and the only difference in the two cases is that, where there is no such clause in the sale, the judge may still grant a delay for payment (R.C.C. art. 2562), whilst with such a clause he is forbidden to do so (R. C.C. art. 2563).

"Our conclusion is that in completed sales of immovable property a purchaser is entitled of right in all cases to pay the purchase price until judicial demand, but no later, with the right in the judge to grant him further delay in cases where the sale does not provide for a dissolution of right, and that in all other commutative contracts the delinquent party has no right to tender performance after being put in default, but may be given further delay at the discretion of the judge, even though not entitled thereto of right."

Commenting further upon the Watson v. Feibel Case, Justice St. Paul said:

"In Watson v. Feibel, supra, the defendant failed to pay the purchase price of a sale of real estate. He was put in default, and suit to rescind was filed the next day. He then immediately tendered the price, and at once renewed the tender in his answer.

"It was a case in which, as said in Perkins v. Frazer, 107 La., [390], 391, 31 So. [773], 774, 'no court on earth (having discretion to allow a contract to be performed after default) would have refused this permission to defendants.'

"The case might therefore have been disposed of without further comment, and in accord with many precedents to be found in our jurisprudence as given above."

■ Anent the principle involved in the above quotation, there appears no conflict between the two cases just referred to. Both hold in effect that since the trial judge is vested with a discretion to allow the delinquent purchaser additional time in which to pay the price involved in the suit to dissolve, he has the right to require the seller to accept a tender of such price made to him immediately after filing of the suit. The greater right certainly includes the lesser.

■■ Bailey is dependent upon farming for a living to pay the notes he owes Wadley and Gleason. He had the moral right to believe he at least had until after the harvesting season in 1938 to pay the notes. He was unquestionably in a position to ask and receive from the court the full term of six months (which would have expired after the close of the 1938 farming season) in which to pay the said notes. Surely, if he would have been entitled to such equitable consideration from the judge, a fortiori he had the right to make such payment at the time and under the circumstances disclosed by this record as a means of defeating the action to dissolve and of preserving in himself the ownership of the land. Under such circumstances, as said by the court in Perkins v. Frazer & Nason, 107 La. 390, 393, 31 So. 773, 774, "no court on earth would have refused" permission to Bailey to make the proffered payment.

For the reasons assigned, the judgment appealed from is affirmed.

DREW, J., recused.